**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Darlene LONGMIRE, a/k/a Darlene Brown, Defendant-Appellant.**

No. 84–1821.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1985.

Decided May 3, 1985.

Rehearing Denied June 13, 1985.

Dean J. Polales, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Thomas Peters, Chicago, Ill., for defendant-appellant.

Before WOOD and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant Darlene Longmire appeals from her conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 1202(a)(1). The sole issue on appeal is whether the district court erred in denying her motion to suppress the firearm.

## I.

At 4:00 p.m. on August 24, 1983, Chicago Police Department Officers Arpaia and Smetana responded to a radio call of "men with guns" at 5218 West Madison Street in Chicago. When they arrived at that location, no complainant came forward. Arpaia and Smetana resumed their normal patrol; within minutes they received a second radio broadcast concerning the same location. When they returned to that location, they met Officer Pacheco, who informed them that there had been people with guns at that address and that they had fled in a full-sized brown Buick. Arpaia and Smetana began patrolling the area in search of the car. Within minutes, a voice, recognized by Arpaia as Officer Pacheco's, transmitted a flash message [1] over the po-

---

* The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

1. At the suppression hearing, Officer Arpaia described a flash message as information received by an officer at the scene from a complainant or witness and transmitted to other officers in the area.

lice radio. The message asked officers to be on the lookout for a late-model light brown Buick occupied by two black females and two black males, who were armed with a handgun and were wanted in connection with an investigation of an aggravated assault; the message further informed officers of the Buick's license plate number and that it was registered to Vancie Howard of 4243 West Carroll. Arpaia and Smetana's patrol of the area was fruitless and they resumed their normal patrol.

At approximately 8:45 p.m., Arpaia and Smetana, who were driving south on Cicero Avenue approximately seven blocks from the Madison Street location, saw parked at 2 South Cicero Avenue a brown Buick that matched the description of the car involved in the earlier incident. They entered the license plate number into their mobile computer terminal and learned that the car was registered to Vancie Howard of 4243 West Carroll. They then parked the squad car behind the Buick. Smetana followed a male who walked away from the area of the Buick. Arpaia walked to the passenger side of the Buick and asked its occupants, two black females, to step out. Defendant Longmire occupied the passenger seat. At Arpaia's request the women stepped to the rear of the car where Arpaia asked them, their names, addresses, and who owned the Buick. The women were not frisked, handcuffed, told they were under arrest, or told they were not free to leave.

After finishing his conversation with the man who had walked away from the area of the Buick upon the officers' initial approach, Smetana returned to the Buick where he saw Arpaia standing with the women and a black male who had approached the scene in the interim. Upon learning that Arpaia had not searched the car, Smetana said he would do so. On the floor of the passenger side of the Buick Smetana found a beige purse the size of a brief case. Inside he discovered a loaded H & R .22 caliber revolver and driver's license in the name of Darlene Brown. Smetana returned to the rear of the Buick and asked, "Who is Darlene Brown?" Defendant responded that she was. Defendant,

her female companion, and the black male who had earlier approached the scene were arrested.

At the suppression hearing, defendant argued that Officers Smetana and Arpaia had no information on the reliability or credibility of the original complainant; that they lacked probable cause to arrest her and to search her purse; and that they should have secured a warrant to search her purse. The government contended that the officers effected an investigatory stop and a valid protective search. The court ruled that the officers possessed sufficient information to justify an investigatory stop, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct 1868, 20 L.Ed.2d 889 (1968), and that the search of the car was lawful.

On appeal, Longmire challenges both the stop and the ensuing search. She contends that the stop was actually an arrest for which the officers had no probable cause and that the search incident thereto was therefore invalid. She argues that even if this court determines that the officers effected only a *Terry* stop, the stop was illegal because the officers had no personal knowledge of the facts that created the reasonable suspicion underlying the flash message and thus had no way of knowing whether the information was reliable and accurate. Finally, she contends that the search was unlawful because Officers Smetana and Arpaia did not possess sufficient specific articulable facts to sustain an objectively reasonable belief that she and her companion were armed and potentially dangerous.

## II.

The trial court ruled that Longmire was not arrested until after the handgun was found in her purse. At the suppression hearing, counsel for Longmire argued that she had been arrested before the search because she was not free to leave, and because when the officers initially stopped the vehicle they intended to arrest her.

■ Among the circumstances courts consider in determining whether an arrest

was made are the officer's intent in stopping the individual, *Sibron v. New York,* 392 U.S. 40, 46–7, 88 S.Ct. 1889, 1894, 20 L.Ed.2d 917 (1968); the length of the stop, *United States v. Vanichromanee,* 742 F.2d 340, 345 (7th Cir.1984); the questions, if any, asked, *id.* at 344; and the extent of the search, if any, made by the officers, *Ybarra v. Illinois,* 444 U.S. 85, 93, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979).

We think it clear that Officers Arpaia and Smetana intended merely to question the occupants of the Buick with regard to the reported aggravated assault. Their actions were consistent with such an intent. Longmire and her companion were asked, not ordered, to step out of the car; Officer Arpaia merely asked them their names, addresses and who owned the car; the women were not frisked, handcuffed, told they were under arrest or told they were not free to leave;[2] Officer Arpaia's gun was not drawn; and the length of the detention prior to arrest does not appear to have been unreasonable. *United States v. Sharpe,* — U.S. —, —, 105 S.Ct. 1568, 1574, 84 L.Ed.2d 605 (1985). Finally, as we will make clear, the search conducted by Officer Smetana did not exceed the area search for weapons permissible in an investigatory stop. We find that the detention constituted a *Terry* investigatory stop in terms of its purpose and the scope of the intrusion, and we turn to the issue whether that stop was based upon a reasonable articulable suspicion.

### III.

Longmire relies largely upon *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), in support of the proposition that the stop was unreasonable because it was effected pursuant to a radio bulletin rather than on the basis of information received directly from the complainant. In *Whiteley,* a sheriff, acting on a tip, swore out a complaint that consisted of nothing more

than his conclusion that defendants had committed the offense charged and obtained an arrest warrant from a magistrate. A police radio bulletin was issued, naming and describing the suspects, the type of car they were probably driving, and the amount and type of money taken. Relying on this bulletin, an officer in another county made a warrantless arrest of the suspects, and conducted a search of the car which yielded incriminating items used to convict defendant.

The Supreme Court found the warrant lacking in probable cause, and rejected the state's argument that the arrest and search were legal because the arresting officer, who relied upon the radio bulletin in making the arrest, reasonably assumed that whoever authorized the bulletin had probable cause for the arrest. The Court made clear that an arresting officer is entitled to act on the strength of a radio bulletin, but where it is later determined that the warrant underlying the bulletin was unsupported by probable cause, the arrest will not necessarily be insulated from challenge merely because the instigating officer chose to rely upon other officers to make the arrest. *Id.* at 568, 91 S.Ct. at 1037.

Longmire contends that *Whiteley* requires that the arresting officer have knowledge of the specific facts that established probable cause for the warrant underlying the radio bulletin. By parity of reasoning, she argues that because Officers Arpaia and Smetana did not know the source of Officer Pacheco's information, they could not rely upon the radio bulletin to stop and question the occupants of the Buick. We do not read *Whiteley* to stand for that proposition and neither have other courts. *See, e.g., United States v. Robinson,* 536 F.2d 1298, 1300 (9th Cir.1976).

Indeed, the Supreme Court recently found that language in *Whiteley* suggests that, had the sheriff who issued the radio bulletin possessed probable cause for an arrest, the arresting officer could have ef-

---

**2.** Although Longmire and her companion probably would not have been permitted to leave, this court has noted that a mere detention does not constitute an arrest. *Vanichromanee,* 742 F.2d at 344.

fected a legal arrest even though he was unaware of the specific facts that established probable cause. *United States v. Hensley*, —— U.S. ——, ——, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985). The admissibility of any evidence discovered during a search incident to the arrest turns on whether the officer who issued the bulletin possessed probable cause to make the arrest. *Id.* The *Hensley* Court, which was addressing the legality of a *Terry* stop to investigate a past crime, found that *Whiteley's* reasoning logically extends to the situation in which an officer effects a *Terry* stop on the basis of a flyer indicating that another police department has a reasonable suspicion that an individual was involved in a crime. Although the officer who issues the radio bulletin or flyer must have a reasonable suspicion sufficient to justify a stop, the officer who acts in reliance on the bulletin or flyer need not have personal knowledge of the facts that created the reasonable suspicion. The stopping officer's reliance on the bulletin, however, must be objectively reasonable: did the facts available to the officer at the time of the *Terry* stop warrant a reasonable belief that the action was appropriate? In sum, *Hensley* teaches that:

> Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, ... the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop, ... and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department.

*Id.* —— U.S. at ——, 105 S.Ct. at 683 (emphasis in original).

In applying *Hensley* to this case, three inquiries must be made: (1) whether an objective reading of the bulletin supported the action taken by Officers Smetana and Arpaia; (2) whether Officer Pacheco had a reasonable suspicion that the occupants of the Buick had been involved in a crime; and (3) whether the seizure and subsequent search of Longmire by Officers Smetana and Arpaia were no more intrusive than

would have been permitted by Officer Pacheco. We address the second issue first, since a stop in objective reliance on a bulletin that has been issued in the absence of a reasonable suspicion violates the fourth amendment. *Id.*

Officer Pacheco was not called to testify at the suppression hearing; the focus of the hearing therefore was not on whether Pacheco had the reasonable suspicion necessary to justify the seizure. The government apparently believed that whether Pacheco had the requisite reasonable suspicion was irrelevant to the reasonableness of the stop and search by Officers Arpaia and Smetana. We believe that *Whiteley* made clear that a relevant inquiry in determining the legality of an arrest pursuant to a flyer or radio bulletin is whether the officer who issued the bulletin or flyer had probable cause. Thus, even before the Supreme Court's decision in *Hensley* (which came down after the briefing in this case but before oral argument) the legality of a stop pursuant to a bulletin or flyer turned on whether the issuing officer had the requisite factual basis for the action. *See Robinson*, 536 F.2d at 1300 (applying *Whiteley* to *Terry* stops). We must decide who shall bear the adverse consequences, if any, of the failure to adduce proof on the issue whether Pacheco had the reasonable suspicion necessary to justify a *Terry* stop.

Citing *United States v. Madison*, 689 F.2d 1300, 1308 (7th Cir.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983), the government contends that Longmire bore the burden of producing evidence and persuading the court that the handgun should be suppressed. The trial court agreed. Not surprisingly, Longmire contends that the government bore this burden.

In *Madison*, a panel of this court addressed the issue who bears the burden of persuasion on a motion to suppress an allegedly involuntary confession. The panel determined that once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to

prove by a preponderance of the evidence that the statement was given voluntarily. *Id. Madison* does not support the government's position that the defendant bears the burden of persuasion on a motion to suppress evidence allegedly seized in violation of the fourth amendment.[3]

■ The general federal rule on who bears the burden of proof with respect to an allegedly illegal search or seizure is based upon the warrant-no warrant dichotomy: If the search or seizure was effected pursuant to a warrant, the defendant bears the burden of proving its illegality; if the police acted without a warrant, the prosecution bears the burden of establishing legality. *See* 3 LaFave, Search and Seizure § 11.2, at 499 (2d ed. 1981). Where the police have acted pursuant to a warrant, the independent determination of probable cause by a magistrate gives rise to a presumption that the arrest or search was legal. But where the police have acted without a warrant, the legality of their action will not be presumed. The dichotomy may be explained, in part, by the often-stated preference that searches and seizures be effected pursuant to warrants. Those seeking to invoke an exception to the warrant requirement bear the burden of establishing that the circumstances required dispensing with that requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). And, because the evidence allegedly constituting probable cause is solely within the

knowledge and control of the arresting officers, they should bear the additional burden of establishing that probable cause in fact existed. *See Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The federal rule makes good sense for without it police officers would have little incentive to seek a warrant.

But the issue presented here is who bears the burden of establishing the legality of a *Terry* investigative stop. *Terry* created a limited exception to the general rule that all seizures of the person must be justified by probable cause to arrest for a crime. Under *Terry*, certain seizures are justifiable under the fourth amendment if there is an articulable suspicion that the person has committed or is about to commit a crime. Although a *Terry* seizure is warrantless, *Terry* creates an exception not to the warrant requirement, but to the probable cause requirement. Placing the burden of proof on the prosecution therefore cannot be justified as a means of fostering the warrant preference. But other considerations support such a placement. Like a warrantless arrest, a *Terry* stop has not been judicially sanctioned; there can be no presumption of legality. And, because the police have not sought judicial approval, no affidavit to which the defendant would have access sets forth the basis for the reasonable suspicion. The facts allegedly constituting the reasonable suspicion are peculiarly within the knowledge and control of the police. To require the defendant to prove the absence of a reasonable suspicion without knowledge of the facts upon which the police based their assessment of the existence of a reasonable suspicion is to place upon him an impossible burden.

**3.** At oral argument, the government cited *Rakas v. Illinois*, 439 U.S. 128, 130–31 n. 1, 99 S.Ct. 421, 423–24 n. 1, 58 L.Ed.2d 387 (1978), for the proposition that the defendant bears the burden of persuasion on a motion to suppress evidence seized during what is claimed by the government to be a *Terry* stop. In *Rakas,* the Supreme Court reiterated that the defendant bears the burden of proving that he has standing to challenge the legality of a search (*i.e.,* that he himself was the victim of an invasion of

privacy). *See also Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Notably, whether the defendant had an expectation of privacy with respect to the place searched or the objects seized is peculiarly within his knowledge and control. The issue of standing has received special treatment by the Supreme Court, and its decisions on the issue cannot be read to place the burden of persuasion on the defendant who seeks to suppress illegally seized evidence.

■ The Supreme Court has stated that the prosecution bears the burden of establishing "that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Because the scope and duration of a seizure must be commensurate with the level of objective justification for it, we believe the prosecution also must bear the burden of establishing there was a reasonable suspicion of criminal activity justifying the seizure. We hold that the government bore the burden of establishing by a preponderance of the evidence, *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), that Officer Pacheco had a reasonable suspicion justifying the seizure of Longmire and her companion.

■ That the government bore this burden but failed to call Officer Pacheco at the suppression hearing does not necessarily mean that the denial of the motion to suppress must be reversed. As the government points out, evidence adduced only at trial may be used to sustain the denial of a motion to suppress. *United States v. Bolin,* 514 F.2d 554, 557 (7th Cir.1975) (citing, *inter alia, Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). *See also United States v. Sanford,* 673 F.2d 1070, 1072 (9th Cir. 1982). This rule is an attractive one; because a defendant is entitled to have evidence suppressed only if it was unconstitutionally obtained, sustaining the denial of the motion on the basis of proof of constitutionality adduced at trial avoids a windfall reversal of the defendant's conviction. It has been pointed out, however, that several problems may be presented by such use of trial testimony. *See* LaFave, § 11.7, at 731. The defense, unaware that the legality of the search or seizure is still an "open question" in this sense, may not challenge certain testimony which bolsters the suppression ruling but is not particularly damaging on the question of defendant's guilt or innocence. And, the appellate court may be placed in the anomalous posi-

tion of accepting as true testimony that the trier of fact might have rejected on credibility grounds. Prejudice to the accused may be the inevitable result in some cases.

With respect to the first concern, defense lawyers were put on notice in 1975 that this circuit will use trial testimony to sustain the denial of a motion to dismiss. They therefore should be aware of the need to challenge trial testimony which touches upon the basis for the search or seizure. The second concern, albeit more troublesome, cannot justify a ban on the use of trial testimony in reviewing this pretrial suppression ruling. Where the credibility and veracity of a relevant government witness have been put into question by defense counsel, an appellate court perhaps should decline to consider the witness' testimony in reviewing the suppression ruling. This, however, is not such a case.

■ Turning to the trial transcript, we find that Officer Pacheco's testimony established by a preponderance of the evidence that he had a reasonable suspicion that the occupants of the Buick had been involved in an aggravated assault. Pacheco testified that when he responded to a radio call of an aggravated assault in the 5200 block of West Madison, the complaining witness, Bernard Jones, told him that two black males and a black female had threatened him (Jones) with a handgun. Jones described the color and make of the car in which the assailants fled the scene and further provided the car's license plate number.

Thus, Pacheco received the information from an alleged victim. The basis of the victim's knowledge was clear and the information could be presumed to be reliable. *United States v. Wilson,* 479 F.2d 936 (7th Cir.1973). Although the description of the assailants does not appear to have been more particularized than race and sex, the description of the automobile was highly particularized and rendered its occupants the legitimate subjects of investigation. Clearly, Jones' information provided Pacheco with sufficient facts to form a reason-

able suspicion that the occupants of the Buick had been involved in an aggravated assault.

Returning to the first *Hensley* inquiry, we conclude that an objective reading of the radio bulletin would justify the conclusion that the occupants of the Buick were wanted for questioning in the investigation of an aggravated assault. *Hensley,* —— U.S. at ——, 105 S.Ct. at 684. This objective reading would justify a brief stop for the purpose of questioning the suspects. The stop that in fact occurred was no more intrusive than would have been permitted Officer Pacheco. Officers Arpaia and Smetana asked Longmire and her companion their names, addresses, and who owned the car.

■■■ The question of the legality of the ensuing search remains. When effecting a *Terry* stop, police officers are authorized to take such steps as are reasonably necessary to protect their personal safety. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In *Long,* the Supreme Court held that the search of the passenger compartment of an automobile incident to an investigative stop, "limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, if taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* 463 U.S. at 1049, 103 S.Ct. at 3480. In other words, the officer must possess "an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Id.* 463 U.S. at 1051, 103 S.Ct. at 3481. That the officer may have the individual under his control outside of the automobile, as in this case, does not render objectively unreasonable the officer's belief that the individual is potentially dangerous. *Id.* (citing, *inter alia, United States v. Rainone,* 586 F.2d 1132, 1134 (7th Cir.1978), *cert. denied,* 440 U.S. 980, 99 S.Ct. 1787, 60 L.Ed.2d 239 (1979)).

From the radio bulletins, Officers Arpaia and Smetana possessed the following information: two black females and two black males, who were armed with a handgun, fled the scene of an aggravated assault in a late-model light brown Buick bearing a certain license plate number and registered to Vancie Howard of 4243 West Carroll. The question we must answer is whether this information together with the rational inferences to be drawn from it supports an objectively reasonable belief that Longmire and her female companion, who were the occupants of the Buick registered to Vancie Howard four hours after the radio bulletins on the Madison Street incident, may have been armed and dangerous.

Longmire argues that the following factors militate against such an objectively reasonable belief: the original dispatch indicated that men, not women, possessed guns; because the bulletins contained no description of the suspects other than race and sex, there was no basis for concluding that Longmire and her female companion were the earlier occupants of the Buick; Longmire and her companion were not engaged in criminal or suspicious activity at the time of the stop; the officers observed no guns in the car when asking the two women to step out; and the passage of four hours between radio bulletins and the stop, during which time no further specific information on the suspects was forthcoming, dissipated what earlier may have been a reasonable belief that the occupants of the Buick were armed and dangerous.

■■■ We conclude that Officers Arpaia and Smetana possessed an articulable objectively reasonable belief that Longmire and her companion were potentially dangerous. The radio bulletins reported that two black women and two black men were the occupants of the Buick; that the occupants were armed with a handgun; and that they were believed to have been involved in an aggravated assault. An objective reading of the bulletin supported a reasonable belief that the occupants were armed and, given the nature of the alleged offense, dangerous. Longmire's focus on

the issue whether she and her companion were reasonably believed to have been the earlier occupants of the Buick is misplaced. As we previously noted, given the specificity in the description of the car, its occupants at the time of the stop were the legitimate subjects of investigation. The discrepancy in the number of occupants found in the vehicle when stopped and the number reported to have been involved in the assault does not alter our conclusion. Clearly, the original size of the group may have been added to or subtracted from.[4] It was not objectively unreasonable to believe that the handgun, with which the occupants of the Buick were armed four hours earlier, might still be in the Buick. Finally, that Longmire and her companion were not engaged in criminal activity when Officers Arpaia and Smetana effected the *Terry* stop does not render objectively unreasonable the officers' belief that they might be armed and dangerous. We conclude that Officers Arpaia and Smetana conducted a valid protective search of the passenger compartment of the Buick. Having discovered the handgun in the car during a lawful search, Officers Arpaia and Smetana had probable cause to arrest the occupants for possession of a firearm.

Finally, Longmire contends that because Officer Pacheco had stopped and searched the Buick shortly after the last radio dispatch was issued and found no weapon, the reasonable suspicion necessary to justify a stop by Officers Smetana and Arpaia dissipated. The fact of Pacheco's earlier search came out at trial. The government contends that if Longmire felt that Pacheco's testimony altered the correctness of the trial court's ruling on her suppression motion, she should have asked the court to reconsider that ruling; because she did not, she cannot now ask this court to consider the evidence in reviewing the denial of the motion to suppress. Alternatively, the government argues that because Officers Smetana and Arpaia were unaware of the

earlier search by Pacheco, their stop and search of the Buick was reasonable. Indeed, in response to a question posed by a member of this panel at oral argument, the government took the position that the same automobile may be stopped and searched any number of times by different officers on the strength of a radio bulletin, no matter how stale, as long as the officers act in good faith, *i.e.*, are unaware of the previous stops.

■ We are troubled by the position the government has taken. Unreasonable delays by issuing officers in updating the information contained in police bulletins or flyers will not be sanctioned by this court. Such delays may render illegal stops and searches pursuant to those bulletins. Further, at some point in time, a reasonable police officer should suspect that the information he received from a bulletin might be stale and should check, if circumstances permit, the current status of the investigation before effecting a stop and search. In other words, after a certain amount of time has passed (which we do not attempt to quantify here), an objective reading of the bulletin may no longer justify the stop. We do not, however, decide the issue here for the following reason.

■ An appellate court must review evidence presented at trial that casts doubt on the correctness of the pretrial suppression ruling where the defendant has moved for reconsideration of the ruling in light of that evidence and the trial court has, in the exercise of its discretion, reconsidered. *United States v. Raddatz*, 447 U.S. 667, 678 n. 6, 100 S.Ct. 2406, 2414 n. 6, 65 L.Ed.2d 424 (1980).

■ Longmire apparently believed that Pacheco's testimony did not alter the correctness of the pretrial suppression ruling for she failed to ask the trial court to

---

**4.** We note the apparent discrepancy between Pacheco's testimony that Jones informed him that the assailants were two black males and one black female and the flash message which stated that the alleged assailants were two black males and two black females, but find it immaterial for this reason.

reconsider that ruling.[5] Only now does she contend that Pacheco's earlier search of the Buick rendered the later search by Arpaia and Smetana unreasonable, and ask that the pretrial ruling be reconsidered. In asking this court to declare the pretrial ruling in error in light of Pacheco's trial testimony, Longmire asks us to circumvent the well-established rule that the trial court be given the first opportunity to correct its mistakes.[6] We decline to do so.

In conclusion, we hold that the district court did not err in denying Longmire's motion to suppress the firearm, and affirm the conviction.

**5.** We do not believe that the testimony indicated such glaring error in the pretrial ruling that the trial court was required to reconsider its ruling *sua sponte. See Government of Virgin Islands v. Hernandez,* 508 F.2d 712, 714 n. 3 (3d Cir.1975).

**6.** True, even absent a defendant's motion for reconsideration an appellate court may use trial testimony to sustain the denial of a motion to suppress. In such a case, of course, we are not asked to alter the trial judge's ruling on the basis of evidence the judge was not asked to reconsider.