**UNITED STATES of America, Plaintiff,**

v.

**Roberto RODRIGUEZ, et al, Defendants.**

**No. HCR 85–27(9).**

United States District Court, N.D. Indiana, Hammond Division.

June 13, 1986.

Gregory A. Vega, Asst. U.S. Atty., Hammond, Ind., for plaintiff.

Antonio J. Curiel, Chicago, Ill., for defendants.

## ORDER DENYING MOTION FOR NEW TRIAL

KANNE, District Judge.

The defendant, Roberto Rodriguez, filed a motion for a new trial raising a number of issues. The court has previously disposed of all but one. The sole matter, remaining to be decided with regard to defendant's motion, concerns the admission into evidence of identification of the defendant resulting from an investigatory stop. For the sake of clarity, the court will again set forth the factual background relating to this issue.

Defendant, along with 30 other codefendants, was charged with conspiring to distribute cocaine and with possessing cocaine with the intent to distribute it. These charges arose from an ongoing investigation of a drug distribution organization headed by codefendant Jesus Zambrana, Sr. The Drug Enforcement Administration (DEA), in cooperation with the Indiana State Police, the Lake County Sheriff's Police, Gary Police and East Chicago Police conducted an intensive investigation of the Zambrana family and those individuals associated with the Zambranas. The investigation involved extensive use of electronic wire intercepts and surveillance.

In the course of this investigation, DEA and the cooperating law enforcement agencies intercepted a shipment of six kilograms of cocaine from Miami, Florida, to the Zambranas in Indiana on April 25, 1985. In addition to the cocaine, DEA agents also confiscated a map containing a telephone number located in Miami, Florida, and subscribed to by an individual named Roberto Rodriguez. The evidence seized on April 25, 1985, as well as prior intercepted telephone communications between an individual in Miami, and Zambrana family members, caused DEA agents to believe that the cocaine, seized on April 25th, had come from a source in Florida and that the source was connected to a Roberto Rodriguez.

Consequently, DEA continued to monitor telephone calls between Jesus Zambrana, Sr., and individuals in Florida. These telephone calls eventually disclosed the fact that someone from Florida was scheduled to arrive in northern Indiana on May 14, 1985, in furtherance of the ongoing cocaine distribution scheme.

DEA Special Agent Trifon Magrames conducted a surveillance of the Holiday Inn on Cline Avenue in Hammond, Indiana, on both May 14 and May 15, 1985. On both occasions, Magrames testified that he observed codefendant Jay Zambrana (son of Jesus Zambrana, Sr.) in the company of an unknown male. On May 15, 1985, Magrames watched the unknown male leave the Holiday Inn and join Jay Zambrana in a white Monte Carlo. Magrames followed the white Monte Carlo to the home of codefendant Andre Sanchez who stored narcotics for the Zambranas. Five minutes later, Magrames observed the unknown male in a green Monte Carlo automobile, bearing Florida license plates. This car ultimately headed south on Interstate 65. Magrames determined that a stop of the green Monte Carlo was necessary in order to identify the unknown driver.

Because of the covert nature of the ongoing investigation, Agent Magrames decided to ask the Indiana State Police for assistance in making the stop. As he followed the unknown male south on Interstate 65, Magrames contacted the Indiana State Police dispatcher by radio, identified himself, and requested a "routine traffic stop" of the green Monte Carlo. The radio contact with the state police dispatcher was limited to the request for stop because of the undercover nature of the investigation and because the police radio, over which Magrames made his request, could be monitored. The radio dispatcher then contacted Trooper Kathy Schwartz, the closest trooper in the area on Interstate 65 being approached by both the green Monte Carlo and Agent Magrames, and directed her to make the stop.

Pursuant to Magrames' request relayed to Trooper Schwartz, the green Monte Carlo was stopped and Trooper Schwartz asked the driver to join her in the squad car. She asked the driver for his license. The driver presented his operator's license

to Trooper Schwartz and was thus identified as Roberto Rodriguez. At that time, Schwartz also informed the driver that tinted windows on the automobile were illegal in Indiana and issued him a warning citation, although she later testified that she was mistaken about the illegality of tinted windows on cars licensed in states other than Indiana. After that short exchange, Rodriguez returned to his automobile and left.

Agent Magrames, as well as several other DEA agents in other automobiles, were in the area of I–65 where Trooper Schwartz made her investigatory stop and had the stop under observation. Approximately two minutes later, Trooper Schwartz met with Agent Magrames at a nearby rest area and gave him a copy of the warning ticket issued to the driver now identified as Roberto Rodriguez.

Two months later, on July 23, 1985, Roberto Rodriguez was arrested in Miami, in the company of codefendant, Antonio Dominguez, at an apartment which had the telephone with the number found on the map seized along with the cocaine.

At trial, Rodriguez was identified as a person accompanying a Zambrana family member during drug related activities, not only by Andrea Sanchez who stored the cocaine, but also by DEA Agent Trifon Magrames. Defendant sought to suppress the identification by Agent Magrames and an additional identification by Trooper Kathy Schwartz, since both of the identifications of Rodriguez were based on the May 15, 1985 stop by Trooper Schwartz—and Trooper Schwartz did not personally have a reasonable suspicion to stop the green Monte Carlo.

Defendant maintained that; not only did Trooper Schwartz not have a reasonable suspicion of defendant's involvement in the Zambrana drug distribution organization; she had no knowledge of any ongoing DEA investigation. At the time she stopped defendant, she did so solely on orders of the state police radio dispatcher who stated only that the green Monte Carlo, bearing Florida license plates, was to be stopped and the driver identified. Because Trooper Schwartz had no knowledge of the underlying reason for the stop, defendant argued that Trooper Schwartz stopped him without an articulable reasonable suspicion in contravention of the Fourth Amendment.

This court previously denied defendant's motion to suppress finding that a police officer may make an investigative stop to obtain identification on the basis of collective knowledge of all investigative agencies involved in the case, thereby satisfying the requirement that the stop be made upon a reasonable suspicion. With regard to this particular case, the court found that in making the investigatory stop on May 15, 1985, Trooper Kathy Schwartz relied on Agent Trifon Magrames' reasonable suspicions concerning the defendant and that Agent Magrames' suspicions were, in turn based on his own observations, as well as the collective knowledge of the agencies investigating the Zambrana organization. Thus, the court found that the May 15, 1985 stop was based upon an articulable suspicion, and denied defendant's motion to suppress evidence resulting from that stop.

In so ruling, the court relied on a line of cases which held that "Probable cause ... can rest upon the *collective* knowledge of the police, rather than solely on that of the officer who actually makes the [stop] .... " *United States v. Pitt*, 382 F.2d 322, 324 (4th Cir.1967). *See also, Moreno-Vallejo v. United States*, 414 F.2d 901, 904 (5th Cir. 1969); *United States v. Scott*, 678 F.2d 606 (5th Cir.1982); *United States v. Soto*, 591 F.2d 1091,, 1099 (5th Cir.1979); *United States v. Michel*, 588 F.2d 986 (5th Cir. 1979); and *United States v. Vasquez*, 534 F.2d 1142 (5th Cir.1976).

As defendant conceded in his present motion for a new trial, which is based on the same grounds as his original motion to suppress, the holding in the cases on which the court relied when it denied the motion to suppress, was recently affirmed by the Supreme Court. The Court ruled that two police officers justifiably relied on information contained in a "flyer" to make an investigatory stop, despite the fact that the officers did not have personal knowledge of

the evidence creating the reasonable suspicion underlying the issuance of that "flyer". *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). In *Hensley*, the Court stated: "If a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on the flyer or bulletin justifies a stop to check identification." *Hensley*, 105 S.Ct. at 683. The Court found that "the law enforcement interests promoted by allowing one department to make an investigatory stop based upon another department's bulletins or flyers are considerable, while the intrusion on personal security is minimal." *Id.* See also, *United States v. Roper*, 702 F.2d 984, 989 (11th Cir.1983) (bail bond company flyer, posted in police station, "was reasonable source of information for a police officer and was sufficient to create a reasonable suspicion").

 As both the recent decision by the Supreme Court and the previous decisions by the various courts of appeal indicate however, an officer may only rely on collective knowledge of other officers in making a stop, if that collective knowledge is based on some underlying articuable reasonable suspicion. Thus, having found that Trooper Schwartz was entitled to rely on Agent Magrames' suspicions in making the investigative stop on May 15, 1985, the court then turned to the inquiry of whether Agent Magrames did in fact have a reasonable suspicion.

In a previous order, the court found that DEA Agent Trifon Magrames had a sufficiently reasonable suspicion to believe that the unknown male he observed in the presence of Jay Zambrana was a participant in the drug organization then under investigation.

As set out in that earlier order, Agent Magrames was aware that a map containing a telephone number, subscribed to by Roberto Rodriguez, was found in the car containing six kilograms of cocaine. Thus, Magrames reasonably suspected that the telephone number subscriber, located in Miami, Florida, was in some way connected with the seized drug shipment coming from Miami to Gary, Indiana. Subsequent telephone intercepts from Miami and specifically from Rodriguez's number, verified the fact that certain individuals in Miami, Florida, were involved with the Zambrana organization. When several intercepted calls indicated that someone from Florida would soon be arriving in northern Indiana and shortly thereafter an unidentified male—driving a green Monte Carlo bearing Florida license plates, staying in a Hammond, Indiana, motel—was observed by Agent Magrames meeting with Jay Zambrana, Magrames reasonably suspected the two might be related. Then, when Magrames observed the unidentified male driver and Jay Zambrana drive to a location where the Zambranas stored narcotics, Magrames had reasonable cause to believe that, under all the circumstances, then known to him, the unidentified male was a member of the ongoing drug distribution scheme. *See United States v. Denney*, 771 F.2d 318 (7th Cir.1985) (the court must look at totality of circumstances to determine whether there was a reasonable suspicion).

In ruling that Agent Magrames had a reasonable suspicion, the court found that a reasonable suspicion exists where agents or police officers are aware of "particularized, objective facts which taken together with rational inferences from those facts, reasonably warrant[ed] a suspicion that a crime was being committed." *United States v. Martin*, 706 F.2d 263 (8th Cir. 1983). Moreover, in formulating a reasonable suspicion, "acts which are innocent in and of themselves may take on more significance when taken together ..." and certain conduct may take on added meaning to "experienced officers trained in the art of observation and ... acquainted with the operating modes of criminals." *United States v. Jones*, 759 F.2d 633, 642 (8th Cir.1985).

It is not necessary that the behavior on which reasonable suspicion is grounded be susceptible only to an interpretation of guilt ... however, the officers [who have the reasonable suspicion] must be acting on facts directly relating to the

suspect or the suspect's conduct and not just on a 'hunch' or on circumstances which describe a very broad category of predominantly innocent persons.

*Id.* at 643.

The facts upon which Magrames based his suspicions and which he observed, viewed objectively by an experienced police officer, could reasonably lead that officer to suspect that the unidentified male was involved in criminal activity, *e.g., United States v. Panelski, et al,* 789 F.2d. 485, (7th Cir.1986).

Once having formulated a reasonable suspicion that the unidentified male was involved in ongoing criminal activity, Magrames was free to make an investigatory stop for purposes of identification. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

However, the question now raised in defendant's motion for a new trial, is whether, Trooper Schwartz was free to make the stop based on Magrames' suspicions. As set out above, *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), affirmed the principle that one officer may rely on the reasonable suspicion of another officer in making a stop where information about the defendant is conveyed to the first officer by a bulletin or a flyer or, in this case, a radio transmission. The court must now determine whether Trooper Schwartz could rely on the Agent Magrames' assistance request, and the Indiana State Police Dispatcher's directive, in making her stop, in light of all the circumstances surrounding Magrames' assistance request, including the fact that very little information was radioed to Trooper Schwartz.

In resolving that issue, the court will again turn to *Hensley,* in which the Supreme Court ruled that "it is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it," in making a stop. In so holding, the Supreme Court relied on the test set forth in *Terry v.*

*Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the Court stated: "[I]t is imperative that the facts [surrounding a stop] be judged against an objective standard: would the facts available to the officer at the moment of seizure 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Id.* at 21–22, 88 S.Ct. at 1880 (emphasis added). Applying the *Terry* test in *Hensley,* the Supreme Court found that "an objective reading of the entire flyer would lead an experienced *officer* to conclude that ... Hensley was at least wanted for questioning and investigation ... (emphasis added)." *See also, United States v. Longmire,* 761 F.2d 411 (7th Cir.1985). (The Court of Appeals followed *Hensley* and ruled that an officer may act in reliance on a flash radio message[1] where "an objective reading" of that message supports the action of the stopping officer).

Applying *Hensley* to this case, the test is whether an objective review of the facts surrounding the investigatory stop would allow Trooper Schwartz to conclude that such an investigatory stop of the driver of the green Monte Carlo was appropriate. Agent Magrames, who had reasonable suspicion to believe Rodriguez was involved in the Zambrana drug distribution organization conveyed a minimal amount of information to the Indiana State Police at the time he requested their assistance in stopping the green Monte Carlo. Agent Magrames identified himself as a DEA agent and requested that the driver of a green Monte Carlo, bearing Florida license plates, be pulled over for a "routine traffic stop" to obtain the driver's identification. No information with respect to why the stop was requested or who the driver might be was conveyed. Trooper Schwartz testified that she overheard Agent Magrames' radioed request for assistance and that she stopped the green Monte Carlo solely because she was told to do so by the radio dispatcher; and, although she issued a warning citation for tinted windows, she

---

**1.** A flash message is 'information received by an officer at the scene from a complainant or witness and transmitted to other officers in the area.' *United States v. Longmire,* 761 F.2d at 413 n. 1.

stated that that was not her reason for pulling the car over.

Thus, the specific issue with which the court is presently concerned is whether Trooper Kathy Schwartz could "defensibly act in reliance" on a directive to stop the green Monte Carlo, knowing that, as an "experienced officer", radio requests, directing investigatory stops, are made because another officer has reasonable suspicion or probable cause to believe the stop is necessary; or, whether the contents of the directive to make the stop were insufficient and, that, given an objective review of the circumstances, as an "experienced officer", she could not, comply with it.

With regard to the issue of whether Trooper Schwartz was entitled to rely on Agent Magrames' reasonable suspicion as conveyed in the limited radio transmission, the government contends that the facts of *Hensley* and *Longmire* are distinguishable from the facts of this case. Thus, although the government concedes *Hensley* and *Longmire* correctly state the law, it contends those cases are inapplicable to the case at bar and that the second *Hensley* criterion need not be satisfied in this case.

The government argues first, that in both *Hensley* and *Longmire*, the crimes under investigation had already been completed whereas in this case, the law enforcement agencies were concerned with preventing or investigating ongoing criminal activities.

Secondly, and more importantly, the government points out that unlike in *Hensley* or *Longmire*, the police officer making the investigatory stop in this case, did not happen to stumble on the suspect of a crime and therefore have to rely on the details of the crime as contained in a flyer or a bulletin. Rather, Trooper Schwartz's attention was directed at one specific individual in a clearly identifiable automobile by DEA Agent Trifon Magrames. In essence then, the government argues that Trooper Schwartz did not have to rely on the contents of a bulletin or flyer as did the stopping officers in *Hensley* and *Longmire.*

In response, defendant argues that although an officer may rely on the collective knowledge of other investigatory agencies in making a stop, that officer must have some awareness of the collective knowledge on which he is relying. In other words, although the stopping officers in *Hensley* and *Longmire* were not aware of the specific details leading to the issuance of the flyer and bulletin respectively, the flyer or the bulletin themselves, contained sufficient information upon which a police officer could reasonably act, anticipating that the reasons for his actions could be based on the same reasonable suspicion which led to the issuance of the bulletin or flyer. In this case defendant points out that the radio assistance request was void of any factual information other than that a DEA agent had requested a "routine traffic" stop of a green Monte Carlo, bearing Florida license plates.

The court has reviewed the record and the parties' arguments and now finds that the motion to suppress identification evidence of Agent Magrames and Trooper Schwartz resulting from the May 15, 1985 stop was properly denied.

Initially, the court would note that the government's distinction between *Hensley*, *Longmire* and this case, based on the ongoing nature of the crime, is of limited force. In *United States v. Hensley*, the Supreme Court specifically found, that in certain situations, the distinction between an investigatory stop made with regard to an ongoing crime and one made to investigate a past crime, is nonexistent. That is to say, both stops may be based upon a *reasonable suspicion* and "the police are not automatically shorn of authority to stop a suspect *in the absence of probable cause* merely because the criminal has completed the crime." 469 U.S. at ——, 105 S.Ct. at 680 (emphasis added). In either case, whether the investigatory stop is made to investigate past or ongoing criminal activity, the stop is subject to certain limits. "The proper way to identify the limits is to apply the *same test* already used to identify the proper bounds of intrusions that further investigations *of imminent or on-*

*going crimes.*" *Id.* (Emphasis added). That test balances the "nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Id.*

As the Supreme Court noted, it is the factors used in applying this test which may vary depending on whether the crime under investigation is ongoing or has already been completed. The Court then set forth a number of factors which distinguish a completed crime from an ongoing crime. However, the court did note that "despite these differences, where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, *or check identification in the absence of probable cause* promotes [a] strong government interest." *Id.* at 681.

Thus, the fact that *Hensley* and *Longmire* involved completed crimes does not negate the need for, at a minimum, a reasonable suspicion to justify an investigatory stop where, as in this case, the stop is made to investigate an ongoing crime. While there is some merit to the government's contention, that a stop made in an investigation of a completed crime may require probable cause as opposed to reasonable suspicion, and, therefore, require even more information than would be required for a stop based on reasonable suspicion; both *Hensley* and *Longmire*, involved investigatory stops of past crimes, based on a reasonable suspicion.

In applying the reasonable suspicion standard, both the Supreme Court and the Seventh Circuit Court of Appeals affirmed the principle that the officer making a stop may rely on another investigating officer's reasonable suspicion for that stop. In *Hensley*, the Court ruled:

> We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification ... 105 S.Ct. at 682

and "the officer who acts on reliance on the bulletin is not required to have personal knowledge of the evidence creating a reasonable suspicion." *Id.*

■ The question again in this case is whether one officer, who relies on reasonable suspicion of another officer in making an investigatory stop, need have any information about the nature of that reasonable suspicion. In other words, may an officer make an investigatory stop simply because he is directed to do so by another investigative officer, who has a sufficient reasonable suspicion to stop the defendant, but does not apprise the stopping officer of any information relating to that reasonable suspicion?

In answering that question, the government's second distinction between the facts in *Hensley, Longmire* and this case is significant. In both *Hensley* and *Longmire*, the officers came upon a suspect, whom they identified as a suspect based *only* upon information contained in the flyer or bulletin issued by another law enforcement official. Again, while the stopping officer may not have been aware of the underlying facts which gave rise to the other investigating officers' reasonable suspicion, the flyer and bulletin contained information which, when objectively read, could lead an officer to defensibly rely upon them.

■ In this case, the assistance request by Agent Magrames, did not, as previously stated, contain information regarding the nature of the investigation, or defendant's role therein. On the other hand, Trooper Schwartz did not happen to come upon defendant as the stopping officers in *Hensley* and *Longmire* did. Her attention and the request for assistance was directed at a specific identifiable green Monte Carlo, bearing Florida license plates. Thus, unlike the officers in *Hensley* and *Longmire*, Trooper Schwartz did not need information regarding defendant in order to satisfy herself that she was stopping the proper individual. In addition, Agent Trifon Magrames, who, as the court has previously found, did have reasonable suspicion to stop defendant, had the investigatory stop

under observation at the time it was made by Trooper Schwartz.

Under the facts in this case therefore, Trooper Schwartz was acting as an extension of Agent Magrames; and not as an individual officer, making a unilateral determination to conduct an investigatory stop. Agent Magrames' request for assistance and Trooper Schwartz's response thereto may properly be compared to a uniformed officer who calls for help from a window of a building, to another officer in the street just as a suspect is seen leaving the front door of the building. Certainly, under such circumstances the assisting officer is entitled to respond to the requesting officer's plea, by making a brief stop regardless of the fact that the assisting officer may not have any objective facts about the suspect at the time he makes the stop. Of course, as here, the assisting officer's action is valid only if the requesting officer had a reasonable suspicion to stop the subject.

The court finds therefore that the May 15, 1985 investigatory stop of defendant, by Trooper Schwartz, was properly based on a reasonable suspicion held by Agent Trifon Magrames.

The court also directed the parties to address the issue of whether the admission of evidence obtained as a result of the May 15, 1985 traffic stop, was harmless error in light of all the evidence adduced at trial. The government argued the evidence of the telephone number on the map found in the car containing the six kilograms of cocaine, registered to an individual named Roberto Rodriguez; evidence of the presence of an unidentified male, registered as Roberto Rodriguez in the Holiday Inn shortly after telephone intercepts indicated that an individual from Florida was scheduled to meet with members of the Zambrana organization; as well as codefendant Andre Sanchez's testimony identifying Roberto Rodriguez, as the man who accompanied Jay Zambrana to Andre Sanchez's home on the day on which DEA Agent Trifon Magrames observed an unidentified male with Jay Zambrana; is sufficient independent evidence of defendant's identity.

Hence, the admission of any evidence of defendant's identity obtained as a result of the May 15, 1985 investigatory stop, if improper, was harmless error.

Defendant Rodriguez contends that Sanchez's testimony was rife with inconsistencies and that all the other evidence, cited by the government, derived its significance only from the evidence obtained as a result of an illegal traffic stop. In other words, the evidence of the phone number registered to Rodriguez, as well as his presence in northern Indiana, were reinforced by evidence of Rodriguez's identity obtained from the May 15, 1985 stop by Trooper Schwartz.

The court now finds that evidence of a telephone number registered to Rodriguez, found in the car containing cocaine; evidence of an unidentified male's presence in northern Indiana with Jay Zambrana shortly after an intercepted call indicating that someone from Florida would be arriving to meet with the Zambranas; as well as testimony by Andre Sanchez that the same unidentified male seen with Jay Zambrana, was Roberto Rodriguez and had visited Sanchez's house to store narcotics; was sufficient to independently identify defendant. The additional identification of defendant resulting from the May 15, 1985 stop was therefore not necessary. The court further finds that even if the evidence in question was erroneously admitted, that admission, if error was harmless, in light of other overwhelming evidence implicating the defendant.

IT IS THEREFORE ORDERED that defendant Roberto Rodriguez's remaining Motion for New Trial is DENIED and sentencing in this matter is set for June 27, 1986, at 10:30 A.M.