946 F.2d 896
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Watonio Lamar JACKSON, Defendant-Appellant.
 No. 91-1097.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1991.
 
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and McRAE, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Watonio Lamar Jackson, was convicted of possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Prior to trial, defendant filed a motion to suppress the evidence relating to the cocaine and the firearm, contending that both had been seized illegally. He also sought suppression of an admission he made just prior to his arrest. The suppression motion was denied after a hearing. The defendant did not testify at the hearing, nor did he call any witnesses.
 
 
 2
 On the first day of trial, defense counsel moved for reconsideration of the denial of the suppression motion. The motion for reconsideration was denied after the court heard oral argument. The trial then proceeded, and defendant did not testify or offer a defense. The jury found the defendant guilty on both counts.
 
 
 3
 On appeal, defendant argues that the court erred in denying his suppression motion. After reviewing the record, we conclude that the suppression motion was properly denied, and we affirm.
 
 I.
 
 4
 On May 31, 1989, the defendant purchased a ticket to Columbus, Ohio, at the Greyhound Bus Depot in Detroit, Michigan. He paid for the one-way ticket in cash, which he took from a large roll of bills in his pocket. After purchasing the ticket, he went into the men's room and changed clothes, emerging in a jogging suit, carrying a tote bag, and wearing a paper on his belt. All of this conduct was observed by Wayne County Deputy Sheriff Marwan Taleb and Richard Issa, an agent of the Bureau of Alcohol, Tobacco and Firearms. Both Taleb and Issa were part of a drug task force and were assigned on that day to the Detroit Greyhound Bus Depot. The officers' attention was first drawn to Jackson because he appeared nervous and was perspiring profusely even though the bus depot was air conditioned.
 
 
 5
 Based upon what they had observed, the officers approached Jackson, identified themselves as police officers, and asked to see his bus ticket. Jackson willingly complied. When asked for identification, Jackson indicated he had none, but he did supply a name and a date of birth. The officers then told Jackson they were assigned to the bus depot for the purpose of enforcing federal drug and firearms laws and asked defendant if they could look in his tote bag. Jackson told the officers they would have to get a search warrant. At this point, Taleb told the defendant he was free to leave but that his bag was going to be detained and subjected to a canine sniff. Jackson then blurted out that he did not want anyone going through his bag "because he had a gun in there and ... some personal use dope." (App.57). Defendant was immediately arrested after making this statement, and a search of the tote bag revealed a quantity of crack cocaine and a revolver. At no time did the officers draw their guns or make any other show of force during this encounter.
 
 II.
 
 6
 At the suppression hearing, the only person who testified was Deputy Sheriff Taleb. The defendant did not take the stand and, other than through the cross-examination of Taleb, offered no evidence. Even under these circumstances the trial judge still must make a credibility determination, but there was little to suggest that Taleb's testimony was other than credible. Nonetheless, defendant does attack the credibility of Taleb, using primarily alleged inconsistencies that were developed at trial, not at the suppression hearing. No post-trial motion was made to reconsider the suppression motion. Under such circumstances, our right to review is limited and may well be non-existent. As we stated in United States v. Thomas, 875 F.2d 559, 562 n. 2(6th Cir.), cert. denied, 110 S.Ct. 189 (1989), "[u]nless the district court is given an opportunity to correct the error, an appellate court cannot review evidence presented at trial which casts doubt upon a pre-trial suppression motion." See United States v. Longmire, 761 F.2d 411, 420-21 (7th Cir.1985). Were we to disregard this very sensible rule, which we are not disposed to do, we would find that most of the so-called inconsistencies have been adequately explained by the government, and those that remain would not dictate a changed result.
 
 
 7
 Having determined that Deputy Sheriff Taleb's testimony was both properly admitted and properly credited, we now turn our attention to the appropriate Fourth Amendment analysis of what transpired at the bus station. We discussed police-citizen encounters, such as the one at issue here, in United States v. Flowers, 909 F.2d 145, 147(6th Cir.1990):
 
 
 8
 From the plethora of airport search cases now reported, it is clear that there are three distinct types of contact that occur between police officers and the travelling public. The first is contact initiated by a police officer without any articulable reason whatsoever. This contact and its consequences are referenced in Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983), as follows:
 
 
 9
 [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.
 
 
 10
 The second type of contact is that predicated upon "reasonable suspicion" -- the classic Terry stop. The temporary detention of a person meeting the drug courier profile would be an example of this type of police-citizen contact which, although constituting a seizure, would not offend the fourth amendment.
 
 
 11
 The third type, seldom found in the context of airport cases insofar as the initial contact is concerned, is when the officers have probable cause to believe a crime has been committed and that the person stopped committed it. In such situations the seizure may, in fact, be an arrest.
 
 
 12
 (Footnote and citations omitted).
 
 
 13
 Applying the Flowers analysis to the facts here, we conclude that the encounter between the officers and Jackson can be classified as one founded upon reasonable suspicion. Jackson does not really take issue with this conclusion, but argues that the reasonable suspicion would only support a detention for a reasonable period of time for further investigation.[1] Here, Jackson argues, the officers would have had to bring a dog from Detroit Metropolitan Airport to sniff the tote bag, and this would have taken 20 to 30 minutes -- an unreasonable length of time. We reject this contention for three reasons. First, Jackson himself was free to leave at any time and was so informed. Second, Jackson never knew there would be a delay, and, before the officers could take any further action, Jackson made the incriminating admission that resulted in his immediate arrest and obviated the need for a dog sniff. Third, we do not believe under these circumstances that a 20 to 30 minute delay would have been unreasonable.[2]
 
 
 14
 Defendant's final argument is that his incriminating admission should have been suppressed because it was the product of an illegal stop and an illegal detention. Since we have concluded that the stop and detention were not violative of the Fourth Amendment, defendant's "fruit of the poisonous tree" argument must fail.
 
 
 15
 AFFIRMED.
 
 
 
 *
 Honorable Robert M. McRae, Jr., United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 In United States v. Place, 462 U.S. 696, 703 (1983), the Supreme Court extended the reasonable suspicion exception of Terry v. Ohio, 392 U.S. 1 (1968), to temporary detention of personal property, such as luggage, for the purpose of conducting a limited investigation, including a dog sniff
 
 
 [1]
 In support of this conclusion, see, e.g., United States v. Sharpe, 470 U.S. 675, 688 (1985) (approving a 20-minute detention), and United States v. Nurse, 916 F.2d 20, 24 (D.C. Cir.1990)(upholding a 20 to 30 minute detention for a dog sniff)