In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2817

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH R. DOWTHARD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 05 CR 50052—**Philip G. Reinhard**, *Judge.*

ARGUED APRIL 11, 2007—DECIDED AUGUST 29, 2007

Before CUDAHY, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* On April 7, 2005, Kenneth Dowthard was pulled over by a Rockford, Illinois, police officer. The officer testified that she stopped Dowthard because she had observed him driving without wearing a seatbelt. During the traffic stop, the officer learned that there were two outstanding warrants for Dowthard's arrest. She accordingly placed him under arrest. Subsequent searches of his person led to the discovery of cocaine, a large sum of cash, and a gun. After his indictment, Dowthard moved to suppress this evidence, claiming that the officer lacked probable cause to stop him. The district court credited the officer's testimony and denied Dowthard's motion to suppress. Dowthard entered a

conditional plea of guilty to counts of possession with intent to distribute cocaine base and being a felon in possession of a firearm, and now appeals the denial of the suppression motion.

**I**

Officer Amy Kennedy was patrolling the northwest side of Rockford, Illinois, on April 7, 2005. Just after 10:00 pm, her vehicle was stopped facing westbound at a red light at the intersection of Auburn Street and Central Avenue. From that vantage point, she told the district court, she observed Dowthard driving a dark-colored vehicle, and she was able to see that he was not wearing a seatbelt. Dowthard turned from southbound Central Avenue onto westbound Auburn Street, directly in front of her. Dowthard disputes this, claiming instead that he was heading north on Central Avenue, and turned left onto westbound Auburn Street; if that had been the case, Officer Kennedy would have had at best an obstructed view of Dowthard's seatbelt. Either way, Officer Kennedy made the decision to pull over Dowthard after he made the turn.

One block west of that intersection, two other police officers were by the side of the road because they had stopped another vehicle. Officer Kennedy decided to pull over Dowthard's vehicle a short distance away, about two blocks past the other traffic stop. As Dowthard's vehicle came to a stop, the passenger in the front seat ran from the vehicle. Another passenger remained in the back seat. Officer Kennedy approached the vehicle and, according to her report, smelled marijuana coming from the vehicle. She asked Dowthard to turn off the engine, asked about the fleeing passenger, and asked whether Dowthard had been smoking marijuana. Dowthard claimed barely to know the fleeing passenger, but admitted that he had

been smoking marijuana. Officer Kennedy retrieved identification documents from both Dowthard and the remaining passenger. She radioed for warrant checks on both of them.

Officer Kennedy learned that Dowthard was wanted on two outstanding arrest warrants, which she confirmed were active. She arrested him, and then two additional police officers who had since arrived on the scene searched him. These officers found some United States currency and a cell phone. At that point, Officer Kennedy took Dowthard to a local police station where she wrote two tickets for him, one for "No insurance" and one for "Not Wearing a Seat Belt." When Dowthard was searched again at the police station, the officers found crack cocaine and a .22 caliber semi-automatic firearm on his person.

Dowthard was indicted for possession with intent to distribute a controlled substance, possessing a firearm during and in relation to a drug trafficking crime, and being a felon in possession of a firearm, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. § 922(g)(1). He filed a motion to suppress the evidence discovered on his person, claiming that Officer Kennedy lacked probable cause to stop him and that her later discovery of his outstanding arrest warrants did not dissipate the taint of the unlawful stop. The district court held a hearing and then denied the motion to suppress. Dowthard entered a conditional guilty plea to the first and third counts, allowing him to challenge the motion to suppress on appeal. The government dismissed the second charge against him.

## II

### A

"On appeal of the district court's denial of [a] motion to suppress, we review the district court's legal conclusions

*de novo* and its findings of fact for clear error." *United States v. Robeles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003). An officer has probable cause for a traffic stop when she has an "objectively reasonable" basis to believe a traffic law has been violated. *United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006). "A stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable." *Id.* at 962. In *McDonald*, however, the police officer believed that the driver of the vehicle he stopped had violated a traffic law regarding turn signal usage, but in fact there was no such traffic law. *Id.* The officer's "good faith belief" may have been subjectively reasonable, but alone it was not objectively reasonable. *Id.*

Here, in contrast to *McDonald*, there is no dispute about the fact that driving without wearing a seatbelt violates Illinois law. See 625 ILCS 5/12-603.1. Indeed, Dowthard received a ticket the night of the traffic stop for exactly that infraction, in addition to being arrested on his outstanding warrants. Dowthard argues nonetheless that Officer Kennedy's testimony about her observations of Dowthard prior to the stop is insufficient to establish probable cause, because it represents only the officer's "subjective belief." Dowthard likens this basis for probable cause to a situation where a police officer with her eyes closed decides to make a traffic stop without having observed a thing. This is ridiculous. It is uncontested that Officer Kennedy believed at the time of the stop that driving without wearing a seatbelt violated a traffic law, and she was correct. She also thought, based on her observations, that Dowthard was not wearing his seatbelt. Only in the realm of epistemology might one think that this could be inadequate, but courts perforce rely on normal human observation of the natural world every day.

In order to prove probable cause, the government need show only that it was "reasonable" for Officer Kennedy to

conclude that Dowthard was not wearing a seatbelt. Even if her belief was incorrect, "[w]hen an officer makes a stop based on a mistake of *fact*, we ask only whether the mistake was reasonable" in order to determine if there was probable cause for the stop. *McDonald*, 453 F.3d at 362 (emphasis in original). Therefore, the only argument available to Dowthard is the factual question whether it was reasonable for Officer Kennedy to believe that she actually observed him driving without wearing a seatbelt. Officer Kennedy testified that she did. Dowthard claims that she could not have seen his seatbelt (or lack thereof) from her vantage point. As we noted above, we give considerable deference to the district court's findings of fact, reviewing them for clear error.

The court evaluated Officer Kennedy's testimony and concluded that it supported the stop:

> I have no reason to believe that there was not probable cause, that is, I'd have to disbelieve her [Officer Kennedy], and I do not, at least for the purposes of this hearing, disbelieve her testimony that there was probable cause that she believed that he did not have a seatbelt on. . . . I believe that it is correct that she thought he did not have it on, and that's all that's required for probable cause.

In the leisure of his chambers, the district court might have phrased this point more felicitously, but we find the meaning clear. The district court understood that Officer Kennedy was saying that she observed Dowthard driving without wearing a seatbelt, and it credited her testimony. The court acknowledged that there was a factual dispute between Dowthard and Officer Kennedy about the direction in which Dowthard's vehicle was heading (northbound or southbound) at the intersection where Officer Kennedy first observed Dowthard. The district court found this dispute to be immaterial, because it concluded that

Kennedy "was able to see the seatbelt" from either direction.

Dowthard tries to undermine the district court's credibility finding by digging for contradictions in Officer Kennedy's testimony, but he has not uncovered anything that would compel us to override the judge's conclusion. Dowthard argues that Officer Kennedy waffled in her testimony about the time of the traffic stop. When asked by the prosecution if the stop occurred at 8:18 pm (rather than the correct time of 10:18 pm), Officer Kennedy agreed. Later, when confronted with the conflict between her testimony and her report of the traffic stop, which listed the time of the stop as 10:18 pm, she admitted that she misspoke if her earlier testimony contradicted her written report. She said that "[w]hatever the paper [her official report of the stop] says, yes. If it says 22:18, [then it was 22:18]." Nothing in this exchange was so egregious that it would require us to upset the district court's decision.

Dowthard next argues that Officer Kennedy did not know which lane she was in when she first observed Dowthard. Officer Kennedy testified that she believed she was in the "inside lane" rather than the "outside" or "[left] turn" lanes, and then later testified that she was in the "middle" lane as opposed to the "outside" lane or the "[left] turn" lane. As the transcript plainly indicates, these are simply two different ways of describing the same lane. There is no inconsistency.

Dowthard also finds some significance in the fact that Officer Kennedy did not pull him over until he was three blocks past the intersection where she first observed him. But Officer Kennedy testified that there was a traffic stop in progress on the block where Dowthard's vehicle turned in front of her. Although Officer Kennedy's testimony did not connect the dots precisely, it is logical that

an officer would not conduct a second traffic stop in the immediate vicinity of an ongoing stop if she did not need to do so. Driving an extra three blocks after observing a violation is not so extraordinary to suggest that the reason for the traffic stop was contrived.

Dowthard's allegations about Officer Kennedy's lack of specific facts that she might have observed that night are nothing but nit-picking. She did not know the color of the car, but it was night, and she knew that the car was "dark." She did not observe whether Dowthard was wearing his seatbelt when she approached his stopped car. She testified, however, that not only do drivers often pull on their seatbelts as they are stopped, but also that she was preoccupied by the fact that the front seat passenger had just fled from the car. She did not recall Dowthard's outfit, but again she said this was because she was concerned about the fleeing passenger.

Finally, Dowthard relies on videos that he submitted that show the view of an officer driving behind a vehicle like Dowthard's. He contends that the district court concluded that these videos demonstrate that the officer could not observe whether a seatbelt was being worn. This is not what the judge said. The district court explicitly found that one could see on the video whether the seatbelt was "tight" or "loose," showing whether it was being worn or not.

Reviewing the transcripts and the court's conclusions, we can see that the judge credited the officer's testimony that she acted on her perception that Dowthard was not wearing a seatbelt as he drove through the intersection of Auburn and Central. We find no clear error in this finding or any other of the district court's findings of fact. The district court properly concluded that Officer Kennedy had probable cause to stop Dowthard.

B

The government argues that even if Officer Kennedy did not have probable cause to stop Dowthard, this court's opinion in *United States v. Johnson*, 383 F.3d 538, 544 (7th Cir. 2004), compels the conclusion that the officer's discovery of the outstanding warrants dissipated the taint of the illegal stop. Because we have concluded that the district court correctly determined that Officer Kennedy had probable cause for the stop, we do not need to reach this argument.

*     *     *

We AFFIRM the district court's denial of Dowthard's motion to suppress.

A true Copy:

       Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*