In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2227

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEVON GROVES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 06 CR 69—**Robert L. Miller, Jr.**, *Chief Judge.*

ARGUED JANUARY 25, 2008—DECIDED MARCH 17, 2009

Before FLAUM, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. A man fired multiple shots into an occupied South Bend, Indiana home, and eyewitnesses told police that Devon Groves was the shooter. After further investigation and consultation with a prosecutor, the lead investigator issued a "crime information bulletin" for Groves indicating he should be picked up if found; the prosecutor had given the go-ahead for the "pickup," and the officer understood that the prosecutor

would be seeking an arrest warrant. About a month after the shooting, an anonymous tipster called 911 and reported that she had just seen Groves and he was "probably" carrying a gun. The caller described Groves's clothing, location, and the car he was in, and patrol units were dispatched to the area to look for him. The dispatcher passed along the information from the tip and also advised responding officers that Groves was wanted on a warrant.

Corporal Christopher Slager soon saw Groves riding in a car that matched the description provided by the tipster. Slager initiated a traffic stop, ordered Groves and the other occupants out of the car, and saw a handgun under the seat where Groves had been sitting. Groves was charged under 18 U.S.C. § 922(g)(1) with being a felon in possession of a firearm and ammunition. He moved to suppress the gun. As it turned out, the dispatcher had been mistaken about the warrant; in fact, there was no warrant for Groves's arrest, only the "crime information bulletin." The district court denied the suppression motion, and a jury convicted Groves on both counts.

On appeal, Groves renews his challenge to the admission of the gun. We reject his arguments and affirm. Although an anonymous tip is generally insufficient to support an investigative stop, *Florida v. J.L.*, 529 U.S. 266 (2000), there was more supporting this stop than just an anonymous tip. Under *United States v. Hensley*, 469 U.S. 221 (1985), police may conduct an investigative stop of a suspect based on a "wanted flyer" or "bulletin" like the one at issue in this case. The bulletin issued for Groves

was supported by ample reasonable suspicion that he was involved in the earlier shooting, and this in turn was sufficient to justify the stop. A complication is that the dispatcher told responding officers there was a warrant for Groves's arrest, not just a pickup "bulletin." But this mistake did not undermine the preexisting reasonable suspicion for the stop. Moreover, to the extent that the error had any effect on the validity of the stop, suppression was not required. The Supreme Court has just held that a negligent mistake by police personnel regarding the existence of a warrant does not require application of the exclusionary rule. *Herring v. United States*, 129 S. Ct. 695 (2009).

## I. Background

In the middle of the night on April 30, 2006, residents of a home on South Bendix Street in South Bend were awakened by a man trying to break the lock on their front door. They recognized the man as Devon Groves and called out to him. Groves ran from their front porch, and seconds later, a spray of gunshots tore through the home from the direction in which Groves had run, nearly hitting the home's occupants.

Corporal David Johnson, a gang investigator in the South Bend Police Department, was assigned to the case. After interviewing the eyewitnesses and conducting further investigation, Johnson and other officers met with a deputy county prosecutor, who indicated he would seek an arrest warrant for Groves. In the meantime, however, the prosecutor authorized Johnson to

issue a "pickup" order for Groves. Technically called a "crime information bulletin," these communications are disseminated throughout the South Bend Police Department and are available to all police personnel as well as outside law-enforcement agencies. The bulletin summarized Groves's involvement in the shooting and provided his identifying information so officers could be on the lookout for him. The bulletin also indicated that the prosecutor had given "verbal authorization" for the pickup.

About a month later, on June 1, 2006, South Bend police received an anonymous 911 call that provided information sufficient to immediately locate Groves. The caller indicated that "right now" Groves was standing outside a particular set of addresses on Elmer Street wearing a white shirt, black shorts, and a black hat, and was next to a black car with specialty rims, and "probably" had "a gun on him." This information was immediately dispatched to patrol units over the police radio. The dispatch informed responding officers that there was a warrant for Groves's arrest. Similar information was also transmitted to officers' in-squad computers. Corporal Slager was within a few blocks of Groves's reported location and was first to spot the vehicle matching the tip's description; he saw a man matching Groves's description sitting in the back seat.

Slager stopped the car. Groves initially failed to respond to several commands to show his hands, but Slager eventually removed Groves from the car and secured him in his cruiser without further incident. The

driver and another occupant were also ordered out of the car. Once they were secured, Slager returned to the car to conduct a protective sweep. Looking inside the open doors, Slager saw a handgun partially concealed under the driver's seat directly in front of Groves's position where he had been sitting in the back seat. Groves was arrested for possession of the handgun.

Groves was eventually charged with two § 922(g)(1) offenses: possession of a firearm by a felon stemming from his possession of the gun on June 1 and possession of ammunition by a felon from the April 30 shooting incident. Groves moved to suppress the gun. At some point after Groves's arrest, it was determined that the dispatcher had been mistaken about the existence of a warrant; for some unknown reason, the prosecutor never obtained one. Groves argued that Slager had neither probable cause nor reasonable suspicion to stop the car because there was no warrant and the anonymous tip wasn't enough by itself. The district court denied the motion, concluding that the anonymous tip provided enough information to supply reasonable suspicion and that Slager had relied in good faith on the dispatcher's representation about the warrant.

The case was then tried to a jury, which convicted Groves on both counts. He was sentenced to 240 months in prison (120 months on each count to run consecutively), above the applicable sentencing guidelines range of 151 to 188 months.

## II. Discussion

Groves appeals his conviction on the firearm count only, specifically challenging the district court's denial of his motion to suppress the gun. He also challenges his sentence on both counts, which at 240 months total was considerably higher than the sentence recommended by the guidelines. We review the district court's findings of fact on the suppression motion for clear error and its legal conclusions de novo. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *see also United States v. McIntire*, 516 F.3d 576 (7th Cir. 2008) (distinguishing between warrant and no-warrant cases). We review the sentence for reasonableness. *Gall v. United States*, 128 S. Ct. 586, 747 (2007); *United States v. Wachowiak*, 496 F.3d 744, 747 (7th Cir. 2007).

Groves claims that Corporal Slager lacked the reasonable suspicion necessary for a lawful stop; there is no question that if the stop was lawful, the protective sweep of the car and the seizure of the gun were also lawful. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983); *United States v. Wimbush*, 337 F.3d 947, 950 (7th Cir. 2003); *United States v. Evans*, 994 F.2d 317, 320-21 (7th Cir. 1993); *United States v. Longmire*, 761 F.2d 411, 419 (7th Cir. 1985). Groves's argument rests on the mistake about the existence of a warrant and the general rule that anonymous tips, without more, are usually too lacking in indicia of reliability to provide reasonable suspicion to conduct a stop. *J.L.*, 529 U.S. at 271.

The district court held that the stop was lawful under *J.L.* because it provided "ample predictive information

with which Officer Slager could test the anonymous informant's knowledge and credibility." This was true on the question of Groves's identity (the caller's information about Groves's location, description, and car were confirmed by the officer before he initiated the stop) but not necessarily true on the question of Groves's criminal activity.

*J.L.* involved a tip similar to the one before us: An anonymous caller told police that a young black male in a plaid shirt standing at a particular bus stop would have a gun. *Id.* at 268. The Supreme Court held that an anonymous tip of this sort did not justify a stop, *id.* at 274, because a tip must have "'sufficient indicia of reliability'" to create reasonable suspicion, *id.* at 270 (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)). Reliability is present, for example, when the informant supplies sufficient predictive information about the suspect so that police can test an informant's knowledge and credibility. *Id.* at 271-72; *White*, 496 U.S. at 332. But the tip in *J.L.* had none of this; it was purely descriptive in nature, lacking any basis from which to discern how the informant knew that the suspect was engaged in illegal activity. The Court held:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a

> tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*J.L.*, 529 U.S. at 271.

The same is true here. Any passerby spotting Groves standing next to the car could have reported his location (and other readily observable details) to the police. But standing beside a car is not illegal; what the police needed to know, and what they could not know based on this tip, was how the caller knew that Groves was carrying a gun. Without more, the anonymous tip in this case could not justify the stop. *Davis v. Novy*, 433 F.3d 926, 929 (7th Cir. 2006); *United States v. Johnson*, 427 F.3d 1053, 1057 (7th Cir. 2005).

But there was more to justify reasonable suspicion here than just the anonymous tip that Groves was probably carrying a gun. The South Bend police bulletin stemming from the April 30 shooting was supported by ample reasonable suspicion and supplied a basis for the stop under the rationale of *Hensley*, 469 U.S. at 232-33. *Hensley* is a variation on the common-knowledge doctrine that allows an officer to rely on an adequately supported "wanted flyer" to justify a stop of a suspect even if the officer does not himself have reasonable suspicion to conduct the stop. The theory is that police may communicate "wanted fliers" and other orders to stop a suspect to the department at large, to officers in the field, and to other law-enforcement agencies provided the issuance of the order is itself supported by reasonable suspicion sufficient to justify the stop. The analysis asks whether the officer issuing the flyer or bulletin had objectively reasonable suspicion to stop the

suspect. *Id.*; *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992); *United States v. Wheeler*, 800 F.2d 100, 103 (7th Cir. 1986); *Longmire*, 761 F.2d at 416. If he did, then a stop carried out on the basis of the flyer or bulletin is lawful.

Groves does not really dispute that Corporal Johnson had reasonable suspicion when he created the bulletin after investigating the April 30 shooting. Indeed, Johnson had probable cause to arrest Groves; eyewitnesses to the shooting identified him as the shooter, which provided probable cause to arrest him. *See Lopez v. City of Chicago*, 464 F.3d 711, 714 (7th Cir. 2006) (Lopez "was arrested without a warrant, although with probable cause—an eyewitness identified him as the shooter."). A problem arises because Corporal Slager was mistakenly told by the dispatcher that there was a warrant out for Groves's arrest, not just a wanted bulletin. Slager testified that he did not recall if he had seen the bulletin about Groves when it was issued a month before; he thought, based on the radio dispatch and the readout on his in-squad computer, that there was a warrant for Groves's arrest.

The police dispatcher's mistake in this regard does not invalidate the stop; that error did nothing to undermine the preexisting reasonable suspicion that supported the issuance of the bulletin. The bulletin bears a distribution list that includes the radio room, the squad room, the detective bureau, and other subdivisions and personnel within the South Bend Police Department, and Corporal Johnson testified that once issued, bulletins are routinely transmitted to the distribution list. It is unclear whether the bulletin was mistakenly entered into the

department's system as a warrant or whether the dispatcher mistook it for a warrant when communicating with officers in the field after the 911 call. But either way, there is no evidence that it was anything other than a mistake.

Even assuming this error affected the validity of the stop, the gun need not have been suppressed. The Supreme Court has recently held that a negligent mistake by police personnel about the existence of a warrant does not require application of the exclusionary rule. *Herring*, 129 S. Ct. at 703. In *Herring*, a deputy sheriff initiated a stop-and-arrest of the defendant based on information communicated by the sheriff's department's warrant clerk that there was an outstanding warrant in a neighboring county for the defendant's arrest. This turned out to be wrong; the warrant had actually been withdrawn some months earlier, but the recall of the warrant had not been entered into the county's database.

The defendant sought suppression of the drugs and gun that were found in the search incident to his arrest. The Supreme Court held that suppression was not required; in this situation, the Court said, the deterrence rationale of the exclusionary rule was so attenuated that exclusion of the evidence was unjustified. *Id.* at 702-03. Noting the absence of any evidence that the county had been reckless in maintaining its warrant system or that knowingly false entries had been made, the Court reasoned that application of the exclusionary rule would produce no real deterrent effect on police misconduct and would be too costly to the truth-seeking and law-enforcement

objectives of the criminal justice system. *Id.* "In light of our repeated holdings that the deterrent effect of suppression must be substantial and outweigh any harm to the justice system, we conclude that when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" *Id.* at 704 (internal citation omitted).

The police mistake at issue here is substantially similar to the one at issue in *Herring.* Accordingly, although we reject Groves's claim that the dispatcher's error invalidated the grounds for the stop, even if we were to assume the stop was invalid, suppression was not required. There is nothing in the record to suggest that the South Bend Police Department recklessly disregarded constitutional requirements or that any police personnel knowingly falsified a warrant record. The suppression motion was properly denied.

Groves also attacks his above-guidelines sentence as unreasonable. We disagree. The district court painstakingly considered both the guidelines range and the sentencing factors that properly inform the court's exercise of post-*Booker* sentencing discretion under 18 U.S.C. § 3553(a). The court took note of the fact that although Groves stood convicted of gun- and ammunition-*possession* offenses, he had demonstrated a propensity to actually *use* firearms—firing multiple shots into an occupied home in the incident underlying the ammunition count, as well as other instances of brandishing and

threats to shoot that were reflected in his criminal background. The court was also strongly influenced by the fact that these convictions were Groves's third and fourth felony convictions in 12 years, and that although he was only 29 years old, he had accumulated a total of 52 arrests, many firearm related. The court concluded that these factors, and the absence of any in mitigation, justified an above-guidelines sentence of 240 months. Groves has not persuaded us that this sentence is unreasonable. *See Wachowiak*, 496 F.3d at 749 (nonguidelines sentence will be affirmed if adequately reasoned and objectively reasonable).

AFFIRMED.