NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 27, 2009
Decided August 28, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 08-2499

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| *v.* | No. 07 CR 50008-1 |
| TRAMELL WATSON, *Defendant-Appellant.* | Frederick J. Kapala, *Judge.* |

**O R D E R**

Tramell Watson was riding in the passenger seat of a car that drew the attention of two police officers. The officers stopped the car and found that Watson, who had a felony conviction, was carrying a gun. He was charged with possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). After Watson unsuccessfully sought to have the gun suppressed, a jury was selected. During jury selection, the government used a peremptory strike to remove the lone African American from the jury pool. The jury eventually voted to convict Watson, and he was sentenced to 120 months' imprisonment. Watson filed a notice of appeal, but his appointed lawyers move to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because they cannot discern any nonfrivolous ground for appeal. Watson did not

accept our invitation to respond to his lawyers' submission. *See* CIR. R. 51(b). Limiting our review to the potential issues identified in counsel's facially adequate supporting brief, *see United States v. Cano-Rodriquez*, 552 F.3d 637, 638 (7th Cir. 2009), we grant counsel's motion and dismiss the appeal.

The first potential issue discussed by counsel is whether Watson could challenge the district court's ruling on the suppression motion. The court denied the motion after hearing testimony from the police officers who stopped the car and from Jonathan Grant, the driver. Officer Richard Kennedy testified that on the night of January 3, 2007, he was driving a squad car with Officer Shalene Eagleson in the passenger seat when he saw a gold car in his rear-view mirror. The officers were driving at the speed limit, so when the gold car passed them, Kennedy knew that the driver was speeding. Both he and Eagleson saw that the driver was not wearing a seatbelt. Grant, the driver, testified that he was wearing his seatbelt. The officers followed the car for several blocks before Grant turned into a residential driveway. Kennedy testified that the officers turned on their emergency lights just before the car pulled into the driveway, Eagleson testified that they turned on the lights at least a block before reaching the driveway, and Grant testified that the lights went on after he turned into the driveway.

After the gold car stopped in the driveway, the officers parked their car in the driveway behind it and approached. While Grant produced an identification card, the officers shined their flashlights into the car. They saw one passenger in the front seat and one in the back. The officers were able to tell that the front-seat passenger was holding two open bottles, one of juice and one of cognac. Kennedy recognized the front-seat passenger as Watson from previous interactions. The officers ordered Watson to put his hands on the dashboard, but instead of following the officers' orders, he reached into his jacket pockets and removed several handfuls of balled-up dollar bills, which he threw into the rear seat. The officers later totaled the cash at about $1,600. After removing the driver and the rear-seat passenger from the car, Kennedy approached the passenger side and told Watson to hand him the bottles. As Watson handed Kennedy the bottles, the officer saw the grip of a handgun in Watson's lap. Kennedy then drew his weapon and told Watson not to move his hands. While Kennedy held his weapon against Watson's head, he removed the gun he had seen in Watson's lap.

In denying Watson's motion to suppress the gun, the district court credited the officers' testimony that Grant was not wearing a seatbelt. Thus, based on the officers' reasonable belief that the driver had violated a traffic law, the court ruled that the stop was lawful. *See United States v. Dowthard*, 500 F.3d 567, 569-71 (7th Cir. 2007). We would review the district court's factual finding for clear error and its legal conclusion de novo. *See United States v. Groves*, 559 F.3d 637, 640 (7th Cir. 2009). But the factual finding is

unassailable. The officers' testimony contained minor inconsistencies, but nothing that would lead us to question the court's decision to credit the officers' testimony over Grant's. *See United States v. House*, 551 F.3d 694, 700 (7th Cir. 2008). And because a driver's failure to wear a seatbelt is a violation of Illinois law, *see* 625 ILCS 5/12-603.1, any argument against the district court's legal conclusion would be frivolous. *See Dowthard*, 500 F.3d at 569-71. Counsel also consider challenging the stop based on its location in a private driveway, but because there was no evidence that Grant's presence in the driveway was even authorized by the driveway's owner, he had no reasonable expectation of privacy there. *See Minnesota v. Olson*, 495 U.S. 91, 99-100 (1990); *see also Bleavins v. Bartels*, 422 F.3d 445, 454 (7th Cir. 2005) (there is generally no right to privacy in a driveway).

The next issue counsel consider raising is the government's use of a peremptory strike against the only African American in the venire. Watson objected to the strike under *Batson v. Kentucky*, 476 U.S. 79 (1986). Although the district court ruled that Watson had not made a prima facie case of a racially discriminatory strike, the court asked the government to explain the strike in order to make a record for appeal. The prosecutor answered that the prospective juror had previously been fined for illegally possessing a gun in her car, so the government did not want her deciding a case involving the illegal possession of a gun in a car. Without explicitly deciding whether this justification was race-neutral, the district court excused the juror. The district court was correct that Watson failed to make a prima facie case because he did not point to any evidence of discrimination beyond the stricken juror's race. *See United States* v. *McMath*, 559 F.3d 657, 664 (7th Cir. 2009). Even if Watson had pointed to evidence that created an inference of discrimination, we see nothing in the record that would call into question the government's race-neutral explanation for the strike. Accordingly, any argument that the court erred by allowing the strike would be frivolous.

Finally, counsel consider a challenge to Watson's prison sentence of 120 months, the statutory maximum. *See* 18 U.S.C. § 924(a)(2). The district court based its sentencing decision on, among others reasons, suspicion over Watson's possession of about $1,600 even though he was unemployed, his history of noncompliance with conditions of his state probation and parole, and his history of violent and aggressive behavior. Because Watson's guidelines range was above the statutory maximum sentence he received, we would review that sentence with a presumption of reasonableness. *See United States v. Sawyer*, 558 F.3d 705, 714-15 (7th Cir. 2009). Counsel have not suggested any way, and we see none, that Watson could overcome the presumption.

Accordingly, counsel's motion to withdraw is **GRANTED**, and the appeal is **DISMISSED**.