NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2010
Decided March 16, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 09-2937

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | |
| | No. 1:08 CR 00136-001 |
| JIMMY ALEXANDER, | |
| *Defendant-Appellant*. | David F. Hamilton, *Judge.* |

**ORDER**

Jimmy Alexander pleaded guilty to defrauding the Federal Emergency Management Agency (FEMA) out of thousands of dollars in emergency aid intended for victims of Hurricane Katrina. The district court sentenced him to 57 months' imprisonment, nearly twice the high end of his guidelines range. The judge explained that he imposed an above-range sentence in part because he believed the guidelines understated the seriousness of the crime. Alexander appeals, contending that rejecting the guidelines based on a "policy disagreement" was error. He also contends that his sentence is unreasonably high.

Alexander was the least of FEMA's concerns when it established Katrina Relief, a program to administer emergency aid to Gulf Coast residents whose homes were damaged or destroyed by Hurricane Katrina. Alexander was not a resident of the Gulf Coast, let alone the head of a household there. He lived in Indianapolis, some 800 miles safely away from the flood zone, and the record suggests that's where he was on August 29, 2005, the day the hurricane hit Louisiana. This, however, did not dissuade him from filing an application for emergency aid with Katrina Relief. In his application and in subsequent requests, he stated that his primary residence in New Orleans was damaged in the storm, and that he intended to avail himself of the full menu of relief options--expedited housing assistance, expedited rental assistance, and personal property assistance. A record check later revealed that the property identified on his application belonged to his mother. Alexander hatched the scheme with his girlfriend, also a resident of Indiana, and together, between September 2005 and December 2006, they squeezed FEMA for $22,450.01 in relief money--all from the comfort of Indianapolis.

Alexander pleaded guilty to conspiring to steal public monies, *see* 18 U.S.C. § 371, and the district court proceeded at sentencing to calculate his guidelines range. To his base offense level of six, *see* U.S.S.G. § 2B1.1(a)(2), the court added six additional levels: four for the amount stolen, and two because his fraud involved the theft of money intended for disaster relief. Because Alexander quickly admitted his guilt, the court subtracted two levels under § 3E1.1, bringing his total offense level to 10. The court then turned to his criminal history, which, it noted, was "extraordinary" for a man under 40. Since turning 18 two decades earlier, Alexander accumulated 26 criminal history points, twice the number needed to put him in category VI at the top of the chart. Alexander's offenses span a range of criminal conduct: three convictions involving theft and receipt of stolen goods; five convictions relating to controlled substances; two convictions for resisting law enforcement; and a battery conviction for shooting someone in the neck. Alexander's offense level and criminal history category yielded an imprisonment range of 24 to 30 months, and it was within that range that both Alexander and the government urged the court to impose a sentence. But the district judge had other ideas.

After considering the factors set forth in 18 U.S.C. § 3553(a), the judge concluded that an above-range sentence was necessary because the guidelines enhancements for emergency-relief fraud failed to reflect the seriousness of Alexander's crime. The judge described the crime as "the lowest of the low." Alexander, the judge explained, set out to profit from "the most generous instincts of American life." Worse yet, he and those guilty of similar crimes might well frustrate the distribution of emergency aid in the future, since a hesitant relief program is more likely to be an ineffectual one. The judge continued: "I said before in another case [*United States v. King*, No. 07 CR 16 (S.D. Ind. filed Jan. 30, 2007)]

involving theft of Katrina funds that what was required was swift, severe and visible punishment." As additional support for the sentence, he noted that Alexander's criminal-history category failed to represent adequately his criminal record. To have amassed 26 criminal history points in twenty years, the judge noted, Alexander must have been "committing crimes whenever [he was] not in prison as an adult." The ultimate sentence imposed, 57 months, was just 3 months shy of the statutory maximum.

Alexander's argument on appeal is somewhat elusive. He contends that the district court unreasonably based its above-range sentence on a categorical disagreement with the guidelines governing fraud rather than the specific characteristics of Alexander's crime. In his opening brief he characterizes this argument as a substantive challenge--a claim that a general policy disagreement with the penal theories embodied in the guidelines does not justify a sentence substantially above the range. But in his reply brief he recasts the argument as a procedural challenge. He argues there that it is an open question whether the district court had the *authority*, under *Kimbrough v. United States*, 552, U.S. 85 (2007), and its progeny, to categorically reject the fraud guidelines in the first place.

Whatever its label, the argument fails: after *Kimbrough*, a sentencing judge is no longer bound by the penal theories that inform the guidelines, and may substitute a theory of his own if doing so would advance the aims of the § 3553(a) sentencing factors. *See Spears v. United States*, 129 S. Ct. 840, 843-44 (2009); *Kimbrough*, 552, U.S. at 101-02; *Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Aguilar-Huerta*, 576 F.3d 365, 366-67 (7th Cir. 2009); *United States v. Herrera-Zuniga*, 571 F.3d 568, 585 (6th Cir. 2009); *see also United States v. Cavera*, 550 F.3d 180, 194-95 (2nd Cir. 2008); *United States v. Tankersley*, 537 F.3d 1100, 1114 n.12 (9th Cir. 2008). In this case, after calculating the guidelines range and considering the sentencing factors, the district judge was not persuaded that the advisory range reflected the gravity of the crime. In other words, the judge consulted the guidelines before determining that a higher sentence would better advance the objectives of the sentencing factors—precisely the approach prescribed by the Supreme Court. *See Rita,* 551 U.S. at 351; *United States v. Kirkpatrick*, 589 F.3d 414, 416 (7th Cir. 2009).

Alexander also argues that his above-range sentence risks creating unwarranted disparities among defendants who have been convicted of similar conduct. For support, he cites two Fifth Circuit cases in which defendants received lighter sentences for similar Katrina-fraud conduct. *See United States v. Conroy*, 567 F.3d 174 (5th Cir. 2009); *United States v. Taylor*, 582 F.3d 558 (5th Cir. 2009). It is true that sentencing judges should strive for uniformity among similarly situated defendants. 18 U.S.C. § 3553(a)(6); *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). But for a disparity to be "unwarranted," the sample of defendants must include not only those who have been found guilty of similar

conduct but also those with similar records. 18 U.S.C. § 3553(a)(6); *United States v. Schmitt*, 495 F.3d 860, 862 (7th Cir. 2007).  What Alexander is missing is evidence that defendants with comparable criminal records who steal relief money tend to receive more favorable sentences.  In this case, Alexander's criminal history was, in the words of the district judge, "extraordinary"; not even Category VI, he observed, came close to expressing the depth and breadth of his record.  We agree.  Accordingly, an above-range sentence was reasonable.  *See United States v. Groves*, 559 F.3d 637, 642-43 (7th Cir. 2009);  *United States v. Jackson*, 547 F.3d 786, 794 (7th Cir. 2008).

Alexander also tries to distinguish his situation from *United States v. King*, 506 F.3d 532, 536-37 (7th Cir. 2007), an *Anders* case the government contends is on point.  The defendant in *King* pleaded guilty to using false social security numbers to steal Katrina relief funds and was sentenced to 105 months' imprisonment, 34 months above the top of the guidelines range.  *King*, 506 F.3d at 534.  In granting appellate counsel's motion to withdraw, we conclude that a challenge to the defendant's above-range sentence would be frivolous.  Alexander points out that the fraud at issue in *King* was far more elaborate than his, and that while the net sentence in *King* was higher than the one he received, the percentage increase over the guidelines range was smaller.  While these distinctions are notable, *King* still supports the government's position, if only because the reasons supplied by the district court for imposing an above-range sentence--the failure of the guidelines to reflect both the defendant's criminal history and the reprehensible nature of his crime--largely tracked those supplied here.

For these reasons, the judgment of the district court is AFFIRMED.