NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2014
Decided August 5, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-3484

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Northern District of Illinois, |
| *Plaintiff-Appellee,* | Eastern Division. |
| *v.* | No. 12 CR 819 |
| ISMAEL CARDONA, | Charles P. Kocoras, |
| *Defendant-Appellant.* | *Judge.* |

**O R D E R**

Ismael Cardona pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and the district court imposed an above-guidelines sentence of 71 months. On appeal Cardona contends that the district court procedurally erred by ignoring his principal argument in mitigation: that his sentence should not exceed the sentences imposed upon his co-defendants because he was less culpable in the offense (sale of an assault rifle to an undercover officer). We affirm.

In March 2012, Cardona and his two co-defendants sold an SKS assault rifle to a confidential informant. The informant, along with an undercover officer posing as his customer, met with Miguel Vega (one of the co-defendants) and paid him $550 for the

assault rifle. The three then met with Cardona and Juan Monrial (another co-defendant) to retrieve the rifle from Cardona's home. Once there, Cardona wiped down the gun and ammunition to eliminate fingerprints. The informant left with the assault rifle, which was later identified as a Chinese-imported, semi-automatic firearm (a "Norinco Arms SKS assault rifle") that could accept a large-capacity magazine, one "banana-style" magazine clip, and eight rounds of ammunition.

Several months later, FBI agents arrested Cardona as a felon in possession of a firearm. Cardona pleaded guilty to the felon-in-possession charge. Vega and Monrial were also indicted on the same charge and sentenced to 46 months' imprisonment and five years' probation, respectively.

A probation officer calculated Cardona's guidelines-imprisonment range as 46 to 57 months, based on a total offense level of 19 and a criminal-history category of IV. The officer did not recommend that any criminal history points be assessed for Cardona's 1991 conviction for attempted murder—for shooting an eight-year-old in the chest—because that conviction was more than 10 years old. *See* U.S.S.G. § 4A1.2(e)(3).

During sentencing, the parties disputed Cardona's role in the offense and whether the exclusion of the 1991 conviction from Cardona's criminal-history score meant that the guidelines range under-represented his past criminal activity. The government pressed for an 87- to 108-month sentence (as if Cardona had received criminal-history points for his 1991 conviction, as well as an increased offense level because the conviction was a crime of violence). Cardona countered with a request for a 24-month sentence because a higher sentence would effectively punish him twice for the 1991 conviction, for which he had served about 4 years in prison. Cardona also argued that the court should take into account his minimal role in the offense as compared to his co-defendants'—because he did "nothing more" than make available his residence to store and sell the gun.

The district court agreed with the government that Cardona's criminal-history category under-represented the seriousness of his past criminal behavior, and sentenced him to 71 months. In the court's view, Cardona had "one of the worst records that [it had] had in a long, long time." The court added that Cardona's co-defendant, Monrial, received only five years' probation because he significantly rehabilitated himself before sentencing (unlike Cardona) and had a criminal history that was not "nearly as bad" as Cardona's. And contrary to Cardona's suggestion that he was less culpable in the offense, Cardona had "let [Monrial] stay at [his] house" and "had no business participating in this gun transaction" involving an assault rifle that had the power to kill many "in the blink of an eye."

Cardona's sole argument on appeal is that the district court failed to adequately consider his primary argument in mitigation: that his minimal role in the offense warranted a lower sentence than the sentences given to his co-defendants, each of whom, he says, played a greater role in the offense. He argues that the district court's cursory explanation that Cardona let Monrial stay at his house and had no business participating in the gun transaction was insufficient to constitute a response to his mitigating argument.

But the district court adequately considered this argument and did not need to elaborate upon why it rejected the argument. *See United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008). A detailed explanation was not required because the record shows that the court rejected Cardona's argument based on the § 3553(a) factors, including Cardona's personal circumstances (his extensive criminal history) and the serious nature of the crime (sale of an assault rifle). *See United States v. Chapman*, 694 F.3d 908, 914 (7th Cir. 2012); *United States v. Curby*, 595 F.3d 795, 797 (7th Cir. 2010). The court explained that Monrial received 5-years' probation because he had only one prior felony conviction and had completed both inpatient and outpatient drug programs during pretrial release, unlike Cardona who had not previously "done something significant" to "straighten [his] life." True, the court did not mention the difference between Vega's 46-month sentence and the 71 months it gave Cardona, but Cardona at sentencing did not direct his argument towards Vega. Cardona, the court said, had one of the worst criminal records that it had seen, and his criminal-history category "under-represent[ed] the seriousness of his conduct," providing sufficient justification for an above-guidelines sentence. *See United States v. Groves*, 559 F.3d 637, 643 (7th Cir. 2009); *United States v. McIntyre*, 531 F.3d 481, 483–84 (7th Cir. 2008).

**AFFIRMED**.