In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1271

RAYMOND E. ECHEVARRIA,

*Plaintiff-Appellant,*

*v.*

DARRIN JACKSON, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-05271 — **LaShonda A. Hunt**, *Judge.*

ARGUED MAY 14, 2026 — DECIDED JUNE 16, 2026

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Raymond Echevarria filed this 42
U.S.C. § 1983 action against Officer Darrin Jackson, Sergeant
Cynthia Spina, and the Forest Preserve District of Cook
County, Illinois ("Forest Preserve"). He claims that the de-
fendants violated his Fourth Amendment rights, as made

applicable to the states through the Fourteenth Amendment,[1] when the officers detained and cited him for public indecency. The district court granted summary judgment to the defendants. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A

On September 30, 2019, a person, giving the name "Camille," called the Forest Preserve police to report that someone had exposed himself in the Busse North area of the Forest Preserve. The caller described the suspect to the dispatcher, who recorded the description as "M/W ABOUT 30–40's Dark Hair, 6ft tall …. DRIVING GRY HONDA CRV … LSW BLU/WHITE STRIPED TANK TOP, GRAY SWEAT PANTS …. PULLED HIS PANTS DOWN."[2] Officer Darrin Jackson received the dispatch call containing this description.

When Officer Jackson arrived at Busse North, he noticed a man staring at him and pulled up next to him to ask if he was the person who had made the call. The man (referred to as "complainant" hereinafter) responded that he was the caller and that he would be willing sign a complaint. The complainant also told Officer Jackson that "[the suspect]'s still back there."[3]

---

[1] *Wolf v. Colorado*, 338 U.S. 25, 28 (1949).

[2] R.89 at ¶ 8; R.94 at ¶ 1.

[3] R.89 at ¶ 13.

Officer Jackson moved to the location identified by the complainant. The Busse North area is known to be a location with frequent public indecency activity.[4] As Mr. Echevarria admits, when Officer Jackson saw him, he substantially matched the description received by Officer Jackson; Mr. Echevarria is a white male with dark hair, approximately six feet and two inches tall, and, on that day, was wearing a blue and white striped tank top and gray sweatpants or shorts.[5] Mr. Echevarria also admits that he was driving a gray Honda CRV on that day.[6]

Officer Jackson approached Mr. Echevarria and asked for his identification. Mr. Echevarria asked if there was a problem, to which Officer Jackson responded "you bet your ass there's a problem."[7] Mr. Echevarria told Officer Jackson that he suffered from post-traumatic stress disorder and that it was "hurting" him to not know why he was being stopped.[8] Officer Jackson noticed that Mr. Echevarria was sweating and shaking and attributed this condition to Mr. Echevarria being nervous.

Officer Jackson detained Mr. Echevarria and issued an ordinance ticket violation for public indecency under Cook County Forest Preserve District Code § 3-3-5(D)(2), but he did not place Mr. Echevarria under arrest. After issuing the ticket, Officer Jackson requested permission from his supervisor,

---

[4] *Id.* at ¶ 17.

[5] R.94 at ¶ 15.

[6] R.89-4 at 47:18–22.

[7] R.89 at ¶ 70.

[8] *Id.* at ¶ 71.

Sergeant Cynthia Spina, to have Mr. Echevarria's vehicle towed pursuant to § 3-4-1(B). That ordinance provides:

> The owner of record of any motor vehicle that is used during the commission of any of the qualified violations as set forth in Section 3-4-2 shall be liable to the District for an administrative penalty of $500.00 plus any towing and storage fees applicable under Section 3-4-2. Any such vehicle shall be subject to seizure and impoundment pursuant to this chapter.

COOK CNTY. FOREST PRES. DIST. CODE § 3-4-1(B) (citation modified). Public indecency under § 3-3-5(D)(2) is a "qualified violation" under § 3-4-2. *Id.* at § 3-4-2.

To tow a vehicle under § 3-4-1(B), the officer must have probable cause to believe that the vehicle is subject to the ordinance—that is, he must have probable cause to believe that the vehicle was used "during the commission" of a qualified violation. *Id.* at § 3-4-1(B), (C). Officer Jackson informed Sergeant Spina that Mr. Echevarria matched the description given by the complainant and that the complainant had agreed to sign a complaint. Based on this information, Sergeant Spina approved the towing.

Mr. Echevarria testified that, before Officer Jackson left the scene, he referred to Mr. Echevarria as a "sicko" and a "pervert."[9] He also testified that at some point in the interaction, Officer Jackson had told him that if he ran, he would send his K9 after him. Mr. Echevarria had been detained for approximately forty-five minutes when Officer Jackson attempted to

---

[9] *Id*. at ¶¶ 73–74.

find the complainant again to sign a complaint. By this time, the complainant was gone. Therefore, the only evidence of the alleged violation was the audio of the complainant's call to the police, and, consequently, the ordinance violation ticket against Mr. Echevarria was dismissed for lack of evidence. This civil rights suit followed.

**B**

Mr. Echevarria's complaint set forth five counts against Officer Jackson, Sergeant Spina, and the Forest Preserve. He alleged unreasonable seizure of property in violation of the Fourth Amendment against all defendants (Count I); unreasonable seizure of property in violation of the Fourth Amendment under a *Monell* theory against the Forest Preserve (Count II); unreasonable seizure of person in violation of the Fourth Amendment against Officer Jackson and the Forest Preserve (Count III); intentional infliction of emotional distress under Illinois law against Officer Jackson and the Forest Preserve (Count IV); and malicious prosecution under Illinois law against Officer Jackson and the Forest Preserve (Count V).

The district court granted summary judgment to the defendants on all counts.[10] At the outset, because Mr. Echevarria

---

[10] While it does not form the basis of our ruling, we note that both parties have failed to fully comply with the briefing requirements of Federal Rule of Appellate Procedure 28 by omitting required components from their briefs. Both parties failed to include a Summary of Argument section as required. Fed. R. App. P. 28(a)(7), 28(b). Additionally, Mr. Echevarria failed to provide the court with an appendix containing the relevant docket entries from the district court—omitting even a copy of the district court decision being appealed. Fed. R. App. 30(a)(1). "Noncompliance with appellate rules wastes time and resources and frustrates the review process." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 791 (7th Cir. 2019). To that end, we must "insist on meticulous compliance with rules

had failed to file a response to the defendants' Northern District of Illinois Local Rule 56.1 statement, the district court held that the defendants' facts were deemed admitted. The court further determined that it would consider the facts in Mr. Echevarria's statement of additional material facts to the extent that they were supported by evidence. Turning to each of the counts, it found that Mr. Echevarria's admission that he matched the suspect's description to be decisive on the unreasonable seizure claims (Count I and Count III), and the malicious prosecution claim (Count V). Mr. Echevarria's shaking and sweating, which Officer Jackson interpreted as a nervous reaction betraying guilt, further supported probable cause. It rejected Mr. Echevarria's characterization of the complainant's initial call as "anonymous" because Officer Jackson had spoken directly with the complainant, and at the time he detained Mr. Echevarria, he reasonably believed that he had a witness willing to sign a complaint. As to the intentional infliction of emotional distress claim (Count IV), the court concluded that Officer Jackson's comments to Mr. Echevarria were not sufficient under Illinois law because "mere insults [and] indignities" are not enough.[11] Finally, the district court concluded that Mr. Echevarria's *Monell* claim (Count II) failed because he could not show that the seizure of his vehicle was unconstitutional.

---

sensibly designed to make appellate briefs as valuable an aid to the decisional process as they can be." *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1224 (7th Cir. 1995). Future appellants, appellees, and counsel would be wise to keep this in mind in all future appeals.

[11] R.105 at 14 (quoting *Shamim v. Siemens Indus., Inc.*, 854 F.Supp. 2d 496, 511 (N.D. Ill. 2012)).

## II

## DISCUSSION

As a general rule, we review de novo the district court's grant of summary judgment, taking the facts in the light most favorable to the plaintiff. *Russell v. Comstock*, 167 F.4th 984, 988 (7th Cir. 2026). Here, however, because Mr. Echevarria failed to comply with Local Rule 56.1, the district court held that the defendants' facts were admitted, and Mr. Echevarria does not challenge that ruling on appeal. We therefore consider the defendants' facts admitted. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (noting that, where Local Rule 56.1 is correctly applied, summary judgment is correctly determined only on facts compliant with the rule).

## A

Mr. Echevarria's complaint contains three claims that hinge on the issue of probable cause: claims under § 1983 alleging violation of the Fourth Amendment for unlawful seizure of person and property, and a malicious prosecution claim. "Probable cause is an absolute defense to any claim under § 1983 for wrongful arrest …." *Bailey v. City of Chicago*, 779 F.3d 689, 694 (7th Cir. 2015). Under Illinois law, a malicious prosecution claim requires a showing that there was no probable cause. *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 265 (Ill. App. Ct. 2002).

## 1

We turn first to Mr. Echevarria's claim of unlawful seizure of his person. Here, the district court correctly held that no reasonable jury could find that Officer Jackson lacked probable cause to detain Mr. Echevarria. Probable cause exists when a police officer has a reasonable belief that the person

to be detained has committed a crime. *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013). In assessing whether probable cause existed, we examine the totality of circumstances, *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), and we focus on the facts and circumstances within the officer's knowledge at the moment the decision to detain is made, *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). The information relied upon by the officer must be "reasonably trustworthy," the sort of information that would lead a reasonably prudent individual to believe that the suspect had committed an offense. *Id.* To support probable cause, the information must contain sufficient indicia of reliability. *See United States v. Groves*, 559 F.3d 637, 640–41 (7th Cir. 2009). In making this assessment, the officer may draw inferences based on his experience. *Ornelas et al. v. United States*, 517 U.S. 690, 700 (1996).

Here, Mr. Echevarria admits that he matched the description of the suspect almost exactly.[12] Additionally, the complainant told dispatch that the suspect exposed himself "just now," allowing a reasonable inference that the complainant was an eyewitness to the alleged illegal activity.[13] That inference was further supported upon Officer Jackson finding Mr. Echevarria where the complainant said he would be. *Cf. United States v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006) (noting that courts typically presume that eyewitness 911 call reports are reliable). Moreover, the Busse North area, where the

---

[12] The only possible discrepancy is whether he was wearing shorts or pants, *see* R.94 at ¶ 15, and that discrepancy is not material to the witness's identification in light of the many similarities. *Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018).

[13] R.89 at ¶ 10.

alleged indecent exposure took place, was known by the officers to be a common site for that type of activity.[14]

Contrary to Mr. Echevarria's characterization, this witness was not truly "anonymous" because Officer Jackson spoke directly to him. While a witness's disappearance after the fact can indicate a lack of reliability where the information is uncorroborated, *see United States v. Lopez*, 907 F.3d 472, 483 (7th Cir. 2018), much of the information here was corroborated by Officer Jackson's own observations. Further, Officer Jackson observed Mr. Echevarria sweating and shaking, which has been "frequently recognized as a sign that a suspect has something to hide …." *United States v. Patton*, 705 F.3d 734, 740 (7th Cir. 2013); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion.").

Because Officer Jackson's decision to seize Mr. Echevarria was supported by probable cause, Counts III and V were properly dismissed on summary judgment.

**2**

Mr. Echevarria's claim for unlawful seizure of property must meet the same fate as his claim alleging the unlawful seizure of his person. Here, Mr. Echevarria submits that because there was no specific evidence linking his vehicle to the alleged offense, there was no probable cause to seize the vehicle.

Even if a local ordinance allows a seizure, the seizure still must meet constitutional standards, *see Soldal v. Cook County*, 506 U.S. 56, 69 (1992), and the Fourth Amendment standard

---

[14] *Id*. at ¶ 18.

for such seizures is reasonableness, *Bell v. City of Chicago*, 835 F.3d 736, 739 (7th Cir. 2016). Police can seize a vehicle under a seizure ordinance only if they have probable cause to believe that the vehicle is subject to seizure. *Id.* at 740 (discussing *Florida v. White*, 526 U.S. 559, 564 (1999) and *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351–52 (1977)).[15]

The seizure ordinance here permits the seizure of "any motor vehicle that is used during the commission" of an indecent exposure violation. COOK CNTY. FOREST PRES. DIST. CODE § 3-4-1(B). The officers had probable cause to believe that Mr. Echevarria had committed the offense of indecent exposure in a public area and that he had used his personal vehicle to transport himself to that public area. Accordingly, a reasonable officer could conclude that the vehicle was used "during the commission" of the offense, and the seizure of his vehicle did not violate the Fourth Amendment. *See, e.g., United States v. 1990 Toyota 4Runner*, 9 F.3d 651, 653–54 (7th Cir. 1993) (holding that a vehicle used to transport a suspect to the location where a drug offense was committed was used "to facilitate" a drug offense, making it subject to forfeiture). Summary judgment was properly granted as to Count I and Count II.[16]

---

[15] The ordinance at issue explicitly provides that officers must have "probable cause to believe that a vehicle is subject to a seizure and impoundment pursuant to this chapter …." COOK CNTY. FOREST PRES. DIST. CODE § 3-4-1(C).

[16] Mr. Echevarria's *Monell* claim fails because there is no underlying constitutional violation. *O'Donnell v. City of Chicago*, 163 F.4th 411, 415 (7th Cir. 2025).

**B**

We now turn to Mr. Echevarria's claim for intentional infliction of emotional distress (Count IV). Under Illinois law, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" to create liability for intentional infliction of emotional distress. *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (citation modified). It is not enough that the defendant acted with the intent to cause emotional distress, "or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* (citation modified). This standard is an objective one. *Harriston v. Chicago Trib. Co.*, 992 F.2d 697, 703 (7th Cir. 1993). We consider the power and influence wielded by the harassing party, the likelihood that the threatened action could be carried out, the legitimate reasons one might have for making the offensive statements, and the defendant's awareness of the plaintiff's susceptibility to physical or mental stress. *Lopacich v. Falk*, 5 F.3d 210, 212 (7th Cir. 1993).

Mr. Echevarria submits that the conduct was extreme and outrageous because Officer Jackson became aware that Mr. Echevarria had PTSD after Mr. Echevarria told him about his condition. "Behavior that might otherwise be considered merely rude, abrasive or inconsiderate, may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional distress." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). But, even taking this consideration into account, the behavior at issue here cannot be characterized as "so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill.

2003). These comments, while unprofessional, crude, and insulting,[17] would not be considered under Illinois law as "beyond the bounds of human decency …." *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 747 (7th Cir. 2008); *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965). Accordingly, they cannot sustain a claim for intentional infliction of emotional distress.

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED

---

[17] Because we are reviewing this case on the district court's grant of summary judgment for the defendants, we must assume that these statements were made.